495 P.2d 160

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Floyd G. HARWOOD, Defendant-Appellant.**

**No. 10712.**

Supreme Court of Idaho.

March 23, 1972

———◆———

John B. Kugler, Pocatello, for defendant-appellant.

W. Anthony Park, Atty. Gen., Martin R. Ward, Deputy Atty. Gen., Boise, James C. Herndon, Pros. Atty., Salmon, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from a judgment of conviction of a misdemeanor. Appellant-defendant Harwood was found guilty of

having had in his possession a game animal, specifically a mountain goat, taken in an area outside that specified in his permit in violation of IC. § 36–805. The trial court imposed a fine of $300 and a fifteen day sentence in the county jail. We reverse the judgment and remand the cause for a new trial.

Of appellant's assignments of error, we need consider only two. First, that a portion of the carcass of a mountain goat was seized from appellant's motor vehicle unlawfully and therefore the admission of that carcass into evidence over his objection was erroneous. Second, appellant contends that the trial court erred in denying his motion for a new trial. That motion was made on the basis of newly discovered evidence which was in the possession of the prosecutor at the time of trial and was not disclosed by the prosecutor. It is asserted that such evidence established the innocence of the defendant with certainty.

Defendant-appellant and a companion had engaged in a hunt for mountain goat. Defendant-appellant possessed a valid permit to hunt and kill a mountain goat within a certain specified geographical area. Having successfully finished their hunt, the two men were having lunch at an eating establishment near Cobalt in Lemhi County at about mid-day. There they met one Baird, a conservation officer for the State Fish and Game Department. During the course of a conversation, appellant-defendant described generally the area where he claimed the goat had been shot. The officer apparently formed a suspicion in his mind that the goat had not been shot in the correct area, evidently based on Baird's belief that the two men could not have walked the distances in the time involved. It later developed, however, that Baird had never previously walked the particular trail in question. The three men went outside the establishment, at which point Baird demanded that appellant display his license and permit. Baird noted the head, cape and rear hams of a goat, all of which were easily visible in the rear of appellant's ve-

hicle. Baird thereupon removed the goat from appellant's vehicle and placed it in his own vehicle. It was not until a considerable period of time later that appellant was arrested.

The following day Baird and another officer traveled to the Fritzer Gulch area, which is only a few miles by road from the eating establishment. There they encountered a deer hunter and, after questioning that hunter, found the remains of a mountain goat which consisted of the front hams and paunch. The deer hunter had seen the kill of the goat the previous day but could not identify either the hunters or their vehicle. A bullet was found in that partial goat carcass and was forwarded to the Federal Bureau of Investigation laboratory for testing. The Fritzer Gulch area is admittedly not within the geographical area in which defendant was entitled to kill a mountain goat as set forth in his permit.

Thereafter the prosecuting attorney for Lemhi County wrote appellant's counsel indicating he would make available to the defense any ballistics report which might be received. The letter also stated, "we would like to take a ballistic's [sic] report on the rifle used by Mr. Harwood. We understand he has a 243 Winchester or a 244 Remington." Upon receipt of that letter counsel for appellant advised the prosecuting attorney that the appellant had a .270 Winchester model 721 Remington and did not have any of the other named rifles. Prior to the initiation of that correspondence, the prosecuting attorney had received a preliminary phone call from the FBI regarding the results of the ballistics tests.

Thereafter, the prosecuting attorney received a written report from the FBI laboratory concerning the ballistics examination of the bullet extracted from the remains of the goat carcass found in Fritzer Gulch. That report stated that the bullet in question was similar in diameter to a .243 Winchester or .244 Remington or 6 mm bullet. The report stated that the bullet in question could not have been fired in

a .270 Winchester Remington Model 721 rifle. The report further stated that the bullet in question had sufficient individual barrel markings of value to sustain a comparison with test bullets from a suspect's rifle.

It is this ballistics information that appellant complains was not furnished to him as promised initially by the prosecuting attorney. This same ballistics information was the basis for appellant's motion for a new trial. It is obvious that the information in the report was highly material and perhaps conclusive on the issue of appellant's guilt or innocence. Appellant's hunting companion was an archery enthusiast and hoped to obtain a kill through the use of a bow. He carried no firearm during the hunt.

■ It is clear from the above that the State knew that appellant had a .270 Winchester model 721 Remington rifle; that the report showed that the bullet found in the Fritzer Gulch carcass could not have been fired from a .270 Winchester model 721 Remington; and that ballistics tests could be performed on appellant's rifle to determine if it had fired the bullet found in the goat carcass in Fritzer Gulch. The prosecuting attorney stated that his failure to supply defense counsel with the ballistics information was an inadvertence and an oversight. We hold that the trial court committed error in denying appellant's motion for a new trial based on the newly discovered evidence, to-wit: the existence of the ballistics report. The suppression of such exculpatory evidence by a prosecutor was a denial of due process. United States v. Poole, 379 F.2d 645 (7th Cir. 1967); Ashley v. State of Texas, 319 F.2d 80 (5th Cir. 1963). In both of the above cases the fact of the exculpatory report was known to the defense and was perhaps discoverable by the defense. Nevertheless it was held that the discoverability of the reports was not a bar to defendant's assertion of lack of due process because of the failure of the prosecution to turn over the reports to the defense or place the reports in evidence itself. With that proposition

we agree. The case herein is even more obvious because of the promise of the prosecution to defense counsel to make the ballistics report available.

■ It is the duty of the prosecution to make available all evidence which tends to aid in ascertaining the truth. The prosecuting officer is expected to be impartial in abstaining from prosecuting as well as in prosecuting. *See*: Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); Stull v. People, 140 Colo. 278, 344 P.2d 455 (1959); Neill v. State, 89 Okl.Cr. 272, 207 P.2d 344 (1949); Code of Professional Responsibility of the Idaho State Bar, DR 7–103, EC 7–13; Professional Responsibility: Report of the Joint Conference, 44 A.B.A.J. 1159, 1218 (1958); State v. McKeehan, 91 Idaho 808, 430 P.2d 886 (1967); State v. Storms, 84 Idaho 372, 372 P.2d 748 (1962); State v. Spencer, 74 Idaho 173, 258 P.2d 1147 (1953).

The failure of the prosecuting attorney to perform his duty, albeit such failure was the result of inadvertence, obviously prejudiced the appellant's defense to the charge. Therefore the judgment of conviction must be reversed and the matter remanded for a new trial.

Since the matter is to be remanded, it is necessary that appellant's assignment of error relating to the introduction of certain evidence be considered. We note initially that no warnings of the *Miranda* type were given to the appellant even though, as stated by the arresting officer, he, during the time of the conversation, had formed a suspicion in his mind that the appellant had killed a mountain goat outside the area in which such hunting was permitted. Appellant asserts that the seizure of the partial goat carcass from his motor vehicle was done without a warrant, was invalid, and therefore the admission of the carcass was erroneous.

■ We note initially the basic proposition that searches without a warrant are per se unreasonable unless falling within certain specific and well-delineated exceptions. Coolidge v. New Hampshire, 403

U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Katz v. United States, 389 U.S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The exceptions to searches conducted outside the judicial process without a warrant include the following, [*See generally*: Wheeler v. Goodman, 330 F.Supp. 1356 (W.D.N.C.1971)]: (a) Search incident to and following a lawful arrest, but only of the suspect's person and of areas within his immediate reach or physical control necessary to protect police against hidden weapons, destruction of the evidence or fruits of the crime, etc. Chimel v. California, *supra*; Von Cleef v. New Jersey, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728 (1969). (b) Search of a vehicle upon probable cause to believe that the vehicle contains articles that the officers are entitled to seize and where the ease and probability of mobility for escape or destruction of the evidence is clear. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970). (c) Consent searches where such consent is knowing and voluntary. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). (d) Search, with probable cause, for and in hot pursuit of a fleeing and dangerous felony suspect. Warden Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L. Ed.2d 782 (1967). (e) Search of abandoned real estate or personal property. Abel v. United States, 362 U.S. 217, 80 S. Ct. 683, 4 L.Ed.2d 668 (1960). (f) A search under urgent necessity (a medical emergency or screams from within a dwelling). United States v. Barone, 330 F.2d 543 (2d. Cir. 1964), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964). (g) Search pursuant to custodial prerogative (as in a vehicle held for forfeiture). Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). (h) Search, with probable cause, necessary to prevent loss or destruction of the thing to be seized. United States v. Barone, *supra;* Johnson v. United States, *supra*.

We reject any contention that there was consent in this case, for mere submissiveness does not in itself give probable cause. Kelley v. United States, 111 U.S. App.D.C. 396, 298 F.2d 310 (1961). The burden is on the State to prove by clear and convincing evidence both that the consent was given and that such consent was knowing and voluntary. State v. Douglas, 488 P.2d 1366 (Or.1971); Johnson v. United States, *supra*. No such showing was made by the State in the instant case.

The state attempts to justify the seizure herein on the basis that the goat carcass was in "plain view" and that therefore the requirement of probable cause was satisfied and that the seizure was therefore authorized under exemptions (b) or (h) from the warrant requirements. We note that cases involving pure seizure as distinguished from search and seizure are indeed rare. It is clear that seizure upon probable cause must be such that the object seized is either the fruit or evidence of a crime or must be similar contraband, wherein the objects in and of themselves give notice that they are incriminating. For example, in the case at bar, if the appellant had been in possession of the carcass of a goat, which was plainly to be seen by the officer, and possessed no license or permit validating the possession of such a carcass, the goat carcass in and of itself would have been contraband or evidence of a crime and therefore subject to seizure upon reasonable cause under the plain view exception. Such, however, was not the case herein since appellant possessed a valid permit validating his possession of the carcass, absent other probable cause. If the appellant was found in possession of a goat carcass within the City of Boise which he claimed to have killed within the last two hours, and the only legal hunting area in which the goat could have been killed was in Kootenai County, then probable cause might exist. Again, such was not the case here. The officer merely sus-

pected that the goat had not been killed in accordance with appellant's statements. Since he had apparently never been on the trail appellant claimed to have used, the officer did not know whether or not the goat could have been killed where appellant claimed it had been killed. The Oregon Supreme Court, in State v. Elkins, 245 Or. 279, 422 P.2d 250, 252 (1966), stated:

"The following question is posed by this case. When an officer has made a lawful arrest and is conducting a lawful search and observes something he does not know to be contraband but of which he is suspicious, may he take it and be sustained in his seizure if his suspicions subsequently prove to be well founded?

"The right to search for and seize the fruits and implements of a crime as an incident of arrest is based, as is the arrest, upon a reasonable belief in the case of a felony, that such a crime has been committed and that the person arrested committed it. [Citations omitted] It would therefore follow that before the officer had the right to seize the implements of a crime * * * he must have reasonable grounds to believe that the article he has discovered is contraband and therefore a crime is being committed. * * *

"It is not enough that the officer suspects in good faith, his suspicion must be reasonable. * * * if contraband may be legally seized when the officer does not have reasonable grounds to believe it is such, it will lead to many interferences with property when the officer's groundless suspicions are wrong. * * * If indiscriminate seizures are allowed upon lawful arrest, it will tend to promote more arrests upon tenuous or fanciful grounds."

*See also*: Thompson v. State, 487 P.2d 737 (Okl.Cr.1971); United States v. Nicholas, 448 F.2d 622 (8th Cir. 1971); Terry v. Ohio, *supra*.

The question then is whether the officer in this case had reasonable cause to believe that the goat was contraband. The State must bear this burden of persuasion.

In a great many of the search and seizure cases reviewed herein, either informants or pre-existing "records" of the suspects had given an officer a basis of reasonable suspicion which, coupled with suspicious acts on the part of the accused, was held to be reasonable cause to believe a crime had been committed. The record herein fails to disclose that Baird had any previous knowledge of appellant or his companion and therefore he encountered them without any possible prior bias. The actions of appellant and his companion give no basis for reasonable cause. It appears from the record that the conversation was initiated by appellant's companion and that it was free and open with no "furtive" gestures, no attempts to coordinate mismatching stories and no evasive or incorrect statements which might arouse the normal suspicion of a police officer.

Appellant claimed that he and his companion had started up the trail in the very early morning hours before daylight using flashlights and that the goat was shot and dismembered near the trail and in an area within which appellant's permit authorized him to hunt; they claimed to have returned down the trail and arrived at their vehicle at approximately noon, at which time they started driving toward the eating establishment near Cobalt. The record does not reveal that Officer Baird had ever walked the trail in question or that he had any special knowledge of the time it would take to walk that trail. Among the exhibits introduced at trial and presently before us, are extensive maps and aerial photos covering the entire areas in question. From such exhibits we can only conclude that a normal person *could* have performed what appellant claimed to have performed within the time limitations. Taking the view most favorable to the prosecution, appellant's story might be considered somewhat suspicious; nevertheless, as pointed out herein, far more than suspicion must exist. At that juncture in time

Baird had only the story furnished to him by appellant and his companion and such story was not so inherently improbable as to give Baird probable cause to believe that a crime had been committed. A more complete investigation by Baird may have given reasonable grounds or probable cause; however, if such was made by Baird, it does not appear in the record before us and the State has therefore failed to meet its burden.

It is clear that the portion of the goat carcass taken from appellant's motor vehicle was seized without a warrant and does not fall into any of the exemptions from the warrant requirement; hence such exhibit was improperly admitted in evidence over the objection of the appellant.

Appellant's remaining assignments of error relate to the admission in evidence, over the objections of appellant, of that portion of the goat carcass found in Fritzer Gulch. Since new questions of materiality, relevance and sufficient foundation for the admission of that exhibit will be presented at a retrial of this matter, such need not be considered herein. Likewise, consideration of appellant's final assignment of error, to-wit: that the judgment is not supported by the evidence, is obviated and need not be discussed.

The judgment of the district court is reversed and the cause remanded for a new trial.

McQUADE, C. J., McFADDEN and DONALDSON, JJ., and MAYNARD, District Judge, concur.