657 P.2d 1095

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Wesley Eugene PINSON,
Defendant-Appellant.**

No. 13904.

Court of Appeals of Idaho.

Jan. 21, 1983.

Barry E. Watson, Wallace, for defendant-appellant.

David H. Leroy, Atty. Gen., Marsha H. Smith, Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

While Wesley Pinson was on probation for a felony, his probation officer conducted a warrantless search and found on his person evidence of commission of another crime. A district court revoked Pinson's probation. Pinson has appealed from the order revoking his probation, contending that the court erred in denying a motion to suppress the evidence discovered in the search. The general issue on appeal is whether the search of Pinson was reasonable under the Fourth Amendment of the United States Constitution and Article I, § 17 of the Idaho Constitution. We conclude that it was and affirm the district court's order.

The background of the case is that Pinson pled guilty in August, 1979, to attempted forgery and was sentenced to an indeterminate, five-year term in the custody of the State Board of Correction. The district court, however, retained jurisdiction over Pinson under I.C. § 19–2601. On May 27, 1980, the court suspended the balance of the sentence and placed Pinson on probation for two years. Pinson signed a probation agreement and was released from custody.

On June 30, 1980, Scott Grant, Pinson's probation officer, received two telephone calls from Pinson's mother, who advised

him that Pinson had drugs in his possession and that he may have burglarized the trailer next to her mobile home. Officer Grant, accompanied by a sheriff's deputy, went to the mother's home, where Pinson was staying. Confronting Pinson at the front door, Grant asked him about the burglary, but Pinson denied any knowledge of it. The officers then requested Pinson's permission to enter the house and to search him and his room. When Pinson asked Grant for a search warrant, Grant said that he did not need one because, as a probation officer, he had the authority to conduct warrantless searches of those under his supervision. Pinson then allowed the officers to enter. Shortly thereafter, the officers requested Pinson to pull up the legs of his pants. They noticed that there were lumps in his socks and directed him to remove the hidden items. This search produced a quantity of evidence, including a small amount of marijuana, some marijuana seeds, several pipes, and other paraphernalia for smoking marijuana. The officers did not search Pinson's room or any other part of the house, and the only evidence they recovered was that seized from Pinson himself.

On the basis of this evidence and admissions made by Pinson (which are not at issue here), a deputy prosecuting attorney for Shoshone County moved the district court to revoke Pinson's probation. Contending that the items seized were the fruits of an illegal search, Pinson's attorney moved to suppress them. After a hearing, the court denied the motion and revoked Pinson's probation.

■ Both the Fourth Amendment and Article I, § 17 of the Idaho Constitution forbid unreasonable searches and seizures. Ordinarily, searches without a warrant are unreasonable *per se.* Evidence seized in a warrantless search must be suppressed unless the search falls within certain specific and well-delineated exceptions to the warrant requirement. *State v. Harwood,* 94

Idaho 615, 495 P.2d 160 (1972). In *Harwood,* the Idaho Supreme Court enumerated eight exceptions to the warrant requirement. Searches of probationers by probation officers were not then recognized by the court as one of these exceptions. While "consent" searches are one of the exceptions to the warrant requirement, the search of Pinson would not qualify under that exception. *See, e.g., State v. Post,* 98 Idaho 834, 573 P.2d 153 (1978), *overruled on other grounds, State v. Bottelson,* 102 Idaho 90, 94, 625 P.2d 1093, 1097 (1981). And, although a probation officer would have the right to conduct a "frisk" or "pat down" search of a probationer for weapons, in the interest of his own safety, that exception also would not be applicable here. When Pinson was required to remove the "lumps" from his socks, the officers were obviously looking for—and expecting—something other than weapons.

■ The issue in this case embraces two related questions—whether probation officers should be required to obtain warrants before conducting searches, and by what standard a court should evaluate the reasonableness of such searches. As a preface to addressing these questions, we note that the courts have adopted a wide range of views in applying the Fourth Amendment to searches of parolees and probationers.[1] Under the traditional view, the protection of the Fourth Amendment was not seen to extend to parolees and probationers. Though not incarcerated, parolees were thought to remain in "constructive custody" and thus had no greater expectation of privacy outside prison than they had within. *See, e.g., People v. Hernandez,* 229 Cal. App.2d 143, 40 Cal.Rptr. 100 (1964). Authorities were free to subject parolees and probationers to routine, warrantless searches, just as though they were still in prison. However, this "constructive custody" theory recently has fallen into disrepute. Commentators have frequently at-

1. Several courts have declined to recognize any distinction between the rights of parolees and probationers for the purposes of applying the Fourth Amendment. *See, e.g. Roman v. State,*

570 P.2d 1235, 1237 n. 3 (Alaska 1977) and *Seim v. State,* 95 Nev. 89, 590 P.2d 1152, 1154 (1979). We likewise decline to do so.

tacked the concept that the status of probationers and parolees is legally comparable to that of prisoners. *See* Note, *Parole: A Critique of Its Legal Foundations and Conditions,* 38 N.Y.U.L.Rev. 702, 704–08, 711–20 (1963); Note, *The Parole System,* 120 U. Pa. L.Rev. 282, 289–96 (1971); White, *The Fourth Amendment Rights of Parolees and Probationers,* 31 U.Pitt.L.Rev. 167, 178–81 (1969). Moreover, in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court further discredited the theory. In concluding that the due process clause of the Fourteenth Amendment requires a hearing before parole can be revoked, the Supreme Court noted that the status of parolees is distinctly different from that of inmates. 408 U.S. at 482, 92 S.Ct. at 2600.

■ However, in defining the scope of a probationer's rights, society's interest in the proper and efficient administration of the probation system must also be considered. As an alternative to incarceration, probation not only benefits the individual probationer, but also society, which is relieved of the burden of caring for another prison inmate. At the same time, probation presents a threat to society because of the possibility that the probationer will relapse into criminal behavior. As a condition of granting freedom to a probationer, society has the right to impose stringent limitations on his behavior. These may include restrictions on important liberties such as the right to travel, to change jobs or residences, or even to marry. Allowing probation authorities to monitor and to enforce such limitations helps ensure that those under supervision will not revert to their former pattern of criminal conduct. These restrictions on their conduct necessarily mean that probationers' reasonable expectations of privacy are less than those of other citizens.

■ The justification for reducing the Fourth Amendment protection to which probationers are entitled stems from this important societal interest in preventing recidivism. For probation authorities to evaluate a probationer's progress in reintegrating into society, the probation officer must have a thorough understanding of the probationer's environment and personal habits. Thus, courts generally have agreed that probation officers have the authority to visit a probationer's home or place of employment without having to procure a warrant. *United States v. Workman,* 585 F.2d 1205, 1208 (4th Cir.1978). *Grubbs v. State,* 373 So.2d 905, 908 (Fla.1979). Since the probation officer's authority puts him lawfully in the probationer's home, he can seize contraband and instruments of crime in plain view there. *Workman, supra* at 1208. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In addition, for his own safety, the probation officer can frisk the probationer without consent. *Workman, supra* at 1208. *State v. Fogarty,* 610 P.2d 140 (Mont.1980).

Moreover, the ability of a parole officer to conduct warrantless searches of persons under his supervision may be "necessary to the effective operation of the parole system." *Latta v. Fitzharris,* 521 F.2d 246, 250 (9th Cir.1975). To obtain the information essential to evaluate the parolee's progress, methods involving little or no intrusion into the privacy of the parolee may not always suffice. To determine whether a parolee is using drugs or keeping weapons or other contraband, it may be necessary, in certain circumstances, for parole authorities to conduct warrantless searches. *Id.* The same reasoning applies with equal force to searches of probationers by probation officers.

■ To ensure that probationers comply with the terms of their probation, warrantless searches of probationers conducted by probation officers are sometimes justified. If the justification for such a search is called into question, as it was here, it can then be judicially examined. We believe that requiring judicial intervention *before* a search, through the warrant process, would unduly impair the probation system. Therefore, we hold that probation officers may conduct warrantless searches incident to their supervision of probationers. However, any such search must pass the test of the Fourth Amendment—reasonableness

under all the circumstances. As in the case with other warrantless searches, the state must carry the burden of showing that the search is reasonable.

Many courts in recent years have tried to develop standards that afford parolees and probationers some protection from indiscriminate searches. In *Latta v. Fitzharris, supra,* for example, the court concluded that a parolee and his home are subject to search by a parole officer only "when the officer reasonably believes that such a search is necessary in the performance of his duties." 521 F.2d at 250. However, the *Latta* court further reduced the limited protection it afforded parolees when it observed that the parole officer's decision to search can be based on specific facts amounting to less than probable cause, or can even be based upon a "hunch" that the parolee is violating his parole. *Id.* In *Latta's* companion case, *United States v. Consuelo-Gonzalez,* 521 F.2d 259 (9th Cir.1975), the court in dictum observed that it would also apply the *Latta* standard to searches of probationers by probation officers.

Rejecting the *Latta* standard as not affording enough Fourth Amendment protection to parolees and probationers, the Fourth Circuit has adhered to a requirement for a search warrant where a search of the home of a parolee or probationer is concerned. In *United States v. Bradley,* 571 F.2d 787, 789 (4th Cir.1978), the court held that "unless an established exception to the warrant requirement is applicable, a parole officer must secure a warrant prior to conducting a search of parolee's place of residence. . . ." In *Workman, supra,* the court likewise concluded that probation officers must secure warrants before searching probationers' homes. In both cases, however, the courts recognized that because of the needs of the probation and parole system, a probation or parole officer can secure a warrant by meeting a less rigorous standard than the requirement of probable cause which applies in ordinary search and seizure cases. *Bradley, supra* at 790; *Workman, supra* at 1207.

Some state courts have fashioned what they have termed an intermediate standard, neither requiring a warrant before all searches, nor permitting wholly discretionary, warrantless searches of the type allowed by *Hernandez, supra.* Declaring that it would adopt the "middle ground," the Colorado Supreme Court, for example, stated that though a warrant is not necessary, an officer investigating a parole violation must have "reasonable grounds" to believe that a parole violation has occurred before he may search the dwelling of a parolee. *People v. Anderson,* 189 Colo. 34, 536 P.2d 302, 305 (1975). *Accord, Seim v. State,* 95 Nev. 89, 590 P.2d 1152, 1155 (1979). Also announcing that it would embrace the middle ground, the court in *State v. Simms,* 10 Wash.App. 75, 516 P.2d 1088, 1096 (1973), held that for a search of a parolee's residence by a parole officer to be reasonable under the Fourth Amendment, "the officer must have at least a well-founded suspicion that a parole violation has occurred."

One court has even constructed a hybrid standard by distinguishing between searches of a probationer's home and searches of his person or vehicle. *State v. Fogarty, supra.* Focusing on the need to protect the rights of innocent third persons, the Montana court in *Fogarty, supra,* held that before a probation officer can search a probationer's *home,* he must obtain a warrant. On the other hand, the court imposed no warrant requirement for searches of the probationer's vehicle or person, since "the privacy of third persons is not intimately involved where a probationer's vehicle is searched or where the probationer is personally searched." 610 P.2d at 153. For these types of searches, the probation officer must only "have some articulable reason for conducting" the search. *Id.*

■ One might question whether the positions staked out by the courts are really as different as they are said to be. There would appear to be little practical difference between a "hunch" based on specific facts and a "well-founded suspicion," or between "reasonable cause" and an "articulable reason for conducting" a search. How-

ever, this brief review of the cases does demonstrate that every court which has considered the issue has concluded that the status of probationers and the legitimate needs of the probation system reduce, at least to some degree, the constitutional protections against searches. As one court has stated: "Because of [the] special relationship between the probation officer and the probationer, the law relating to probation searches cannot be strictly governed by automatic reference to ordinary search and seizure law." *State v. Earnest,* 293 N.W.2d 365, 368 (Minn.1980). We agree with this conclusion.

■ For proper supervision of a probationer, a probation officer is required to know more than merely whether the probationer is law abiding. He must also know that the probationer is not involved in activities or associations prohibited by the probation agreement. These considerations give rise to a need for a probation officer to know that the probationer is complying with all terms and conditions of probation. Accordingly, we hold that a probation officer may make a warrantless search of a probationer if (a) he has reasonable grounds to believe that the probationer has violated some condition of probation and (b) the search is reasonably related to disclosure or confirmation of that violation.

■ We now focus on the warrantless search made of Pinson in this case.[2] It was a search only of Pinson's person and did not amount to a general search of his residence. Pinson's probation officer had the lawful authority to request entrance to his home. *United States v. Workman, supra; Grubbs v. State, supra.* The officer's entrance into Pinson's residence did not in itself constitute a search or an unreasonable intrusion. Moreover, it appears to us that before he initiated the search Officer Grant had reasonable grounds to believe that Pinson had violated a term of his probation by possessing illegal drugs; and the search was reasonably related to confirming the viola-

tion. These grounds were provided by the two telephone calls Grant received from Pinson's mother, telling him that Pinson had drugs in his possession. Mrs. Pinson was in a position to know about her son's activities because he was staying at her home. The officer had no reason to doubt the validity of the information. The search was conducted without force, during the daytime, shortly after the call was received. We conclude, under all of the circumstances, that the search was reasonable. *People v. Anderson, supra; State v. Fogarty, supra; Seim v. State, supra; State v. Simms, supra.*

■ While approving the search in this case, we note that intrusions upon a probationer's privacy which do not relate to proper administration of probation are invalid. A search cannot be based upon a mere hunch without factual basis, nor upon "casual rumor, general reputation, or mere whim." *State v. Simms, supra* 516 P.2d at 1096. Moreover, searches intended merely to harass or intimidate probationers or parolees cannot be tolerated. *Latta v. Fitzharris, supra* at 252. Courts have perceived a distinction between searches of probationers conducted by a supervising probation officer and those conducted by the police. The "special and unique" interest which probation authorities have in invading the privacy of probationers "does not extend to law enforcement officers generally." *United States v. Consuelo-Gonzalez, supra* at 266. Of course, if a parole or probation officer is justified in making a search, as in this case, he may enlist the aid of police officers in performing his duty. *State v. Simms, supra* 516 P.2d at 1095.

Because in this case Officer Grant had reasonable grounds to believe that Pinson possessed illegal drugs in violation of his probation, the district court did not err in refusing to suppress the evidence used against Pinson in his probation revocation

---

2. We emphasize that this was not a case where the probation document itself contained some agreement that the probationer would undergo a search, examination or test, upon request. We make no ruling here as to the validity of such a provision in a probation agreement.

hearing. We affirm the district court's order revoking probation.

WALTERS, C.J., and BURNETT, J., concur.