718 P.2d 598

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Mariano VEGA, Defendant-Appellant.**

No. 16028.

Court of Appeals of Idaho.

May 5, 1986.

Alan E. Trimming, Ada Co. Public Defender, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Sheila G. Bush, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

A jury found Mariano Vega guilty of robbery and of using a firearm during the robbery. On appeal, Vega raises two issues. First, he asserts that the district court should have suppressed evidence seized in a warrantless search conducted by his parole officer and the police. Second, he maintains the evidence offered· at trial was insufficient to prove that an operable firearm, as defined in I.C. § 19–2520, was used in the robbery. We affirm the judgment of conviction.

The record reveals the following facts. During the evening of September 29, 1984, two men wearing nylon stocking masks robbed a supermarket in Boise, Idaho. Witnesses said both robbers were armed with handguns. Two days later, two of the supermarket's employees, following a photo line-up containing Vega's picture, tentatively identified Vega as one of the assailants. Detective Wallace was assigned to the case and he continued to follow up on other leads. Late in the evening of November 7, 1984, Vega's girlfriend contacted the police. She related to Detective Wallace that Vega had assaulted her, that he had a gun, and that he may have been involved in the supermarket robbery. Because Vega was on parole, his parole officer, Fisher, was contacted and apprised of the information obtained from Vega's girlfriend. Fisher immediately went to his office at approximately 11:30 P.M. and verified that Vega was in fact on parole. A decision to search Vega's residence was then made. The

state contends Fisher decided to conduct the search, assisted by the police. To the contrary, Vega asserts the police determined to conduct the search, using Fisher as their agent. While the police were preparing to enter the residence at approximately 1 A.M., Vega arrived at the scene. He observed the police officers and fled but was arrested three blocks away. Parole officer Fisher and Detective Wallace then conducted a warrantless search of Vega's residence. The searchers seized various items of clothing similar to those worn by the supermarket robbers. In addition, the searchers also recovered marijuana, ammunition, and a holster that conceivably would accommodate the type of handgun allegedly used by Vega in the robbery. No handgun was found or admitted at trial.

At his preliminary hearing and at a subsequent suppression hearing, Vega argued that the evidence seized in the warrantless search should have been suppressed. He asserts that his rights under the fourth amendment to the United States Constitution were violated. He contends that the police circumvented the normal judicial process of obtaining a warrant, by requesting Vega's parole officer to conduct a search of Vega's residence under the guise of a "parole search." Although Vega concedes that a parole officer may search a parolee's residence without a warrant, he asserts the search here was in furtherance of a criminal investigation and not conducted pursuant to the administration of his parole. The district court denied the suppression motion, allowing the seized evidence to be used at Vega's trial. Vega was subsequently convicted of the robbery and of using a firearm in the commission of the robbery.

I

The fourth amendment of the United States Constitution and art. I, § 17 of the Idaho Constitution forbid unreasonable searches. A warrantless search is per se unreasonable and the fruits of that search are normally suppressible, unless the search represents an exception to the war-

rant requirement. *State v. Harwood,* 94 Idaho 615, 495 P.2d 160 (1972). We have held that searches conducted pursuant to the administration of probation or parole are an exception to the warrant restriction. *State v. Pinson,* 104 Idaho 227, 657 P.2d 1095 (Ct.App.1983). However, the state must show that any such warrantless search conducted by the parole officer is reasonable. A parole officer may make a warrantless search of a parolee and his residence if the officer has reasonable grounds to believe that the parolee has violated some parole condition and the search is reasonably related to disclosure or confirmation of that violation. *Id.* at 233, 657 P.2d at 1101. A parole officer may also enlist the aid of the police when conducting a justified search. *Id.* Here, Vega argues that the police enlisted the parole officer's assistance merely for the purpose of utilizing the parole officer's authority to conduct a warrantless search. Thus, the district court at the suppression hearing was required to determine (1) whether the search was authorized and conducted by a parole officer in the interest of supervising the parolee, and if so; (2) whether the parole officer had reasonable grounds to believe that the parolee violated some condition of parole; and (3) whether the search reasonably related to disclosure or confirmation of that violation.

Vega argues that *Pinson* is not controlling in this case. He contends that a statement made by Detective Wallace at the preliminary hearing supports his assertion that the police, and not Officer Fisher, made the decision to search his residence. Detective Wallace was asked why he contacted Vega's parole officer.

[Q]: ... you contacted Mr. Fisher for purposes of doing a search then?

[A]: That was what Mr. Fisher was available for, yes, sir.

[Q]: You didn't try to go to a judge and get a search warrant?

[A]: No, sir.

[Q]: As a matter of fact, you didn't attempt to obtain any kind of judicial process of any type, did you?

[A]: It was—at that time it was unnecessary.

[Q]: Well, that doesn't answer my question.

[A]: No, sir.

[Q]: And it wasn't necessary because you knew that Mr. Fisher, being a parole officer, can conduct a search without a warrant?

[A]: That's the way it's been in the past....

Vega asserts the above passage indicates the parole officer was in fact an agent of the police. Thus, he claims the warrantless exception afforded parole officers is not applicable.

Whether the parole officer made the decision to search Vega's residence is essentially a factual question. In general, factual determinations by a trial judge will not be set aside on appeal unless they are clearly erroneous. *State v. Moulds*, 105 Idaho 880, 673 P.2d 1074 (Ct.App.1983). *See also State v. Bainbridge*, 108 Idaho 273, 698 P.2d 335 (1985). A factual finding will not be deemed "clearly erroneous" unless the appellate court, after reviewing the totality of the evidence, is left with the definite and firm conviction that a mistake has been committed. *Moulds*, 105 Idaho at 890, 673 P.2d at 1084. We believe the question whether Officer Fisher exercised his authority to search Vega's residence is a factual question.

■ After a hearing, the district court concluded that "the search was not collusive and that the parole officer was not acting as a mere agent of the police in conducting the search." The court found that the parole officer made the decision to search Vega's residence. The court noted that the "police officers involved corroborated that the parole officer made the decision to conduct the search." The court acknowledged that a parole officer may search a parolee in the course of supervising the parolee, but such a search " 'may

not be done for the prime purpose of circumventing the ordinary constitutional processes for the convenience of law enforcement officers in the course of their investigation.' " *Quoting* 3 W. LaFAVE, SEARCH AND SEIZURE, A TREATISE ON THE FOURTH AMENDMENT § 10.-10, at 449 (1978). It is impermissible for the police to use parole officers in lieu of a warrant to search, when conducting a criminal investigation, but nothing precludes mutually beneficial cooperation between law enforcement officials and parole officers. *State v. Hill*, 136 Ariz. 347, 666 P.2d 92 (Ct.App.1982), *citing Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975). We hold the court's finding that parole officer Fisher made the decision to search is not clearly erroneous and, hence, the court's finding will be upheld.

■ We next examine whether Officer Fisher had reasonable grounds to believe that Vega had violated a condition of his parole and whether the search was reasonably related to disclosure of the alleged violation. As previously mentioned, Vega's girlfriend told police she had been assaulted by Vega, he had a gun, and he may have robbed the supermarket. Vega's parole agreement provided that he would not harm others or possess any firearms.[1] At the time, Vega and his girlfriend were living together and she was in a unique situation to observe his conduct. We believe that the information provided by the girlfriend, as well as the identification by the victims of Vega as one of the robbers, was sufficient to support a reasonable belief that Vega had violated his parole.

Although the search was conducted late at night, it took place within one and one-half hours after Vega's girlfriend contacted the police. The assistance of the police in securing the premises was reasonable, considering that Vega was suspected of possessing a gun. Further, Vega has not

---

1. The parole agreement also provided that Vega "will submit to search of my person or property, conducted in a reasonable manner and at a reasonable time, by a probation or parole offi-

cer." We express no opinion as to the validity of such a condition in the parole agreement. *See State v. Pinson*, 104 Idaho at 233 n. 2, 657 P.2d at 1101 n. 2.

asserted that the search itself was otherwise unreasonable. We conclude that the district court did not err in refusing to suppress the evidence taken from Vega's residence.

## II

 Next, Vega contends that the evidence offered at trial was insufficient to support a conviction of using a firearm in the commission of the robbery. I.C. § 19–2520. In particular, Vega argues that no weapon was offered into evidence and there was no evidence that the alleged weapon was operable or could readily be rendered operable.[2] "A judgment of conviction, entered upon a jury verdict, will not be set aside where there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable. doubt." *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). We will not substitute our judgment for that of the jury as to the credibility of witnesses, the weight of testimony, and the reasonable inferences drawn from the evidence. *Id.; State v. Campbell*, 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983).

Although no firearm was admitted into evidence, "circumstantial evidence may be used to show that a firearm is operable." *State v. Metzgar*, 109 Idaho 732, 733, 710 P.2d 642, 643 (Ct.App.1985), *quoting State v. Stedtfeld*, 108 Idaho 695, 698, 701 P.2d 315, 318 (Ct.App.1985). Here, a supermarket employee who observed the firearm allegedly used by Vega in the robbery—from a distance of no more than two feet—described the firearm as a revolver with a six to eight inch barrel. The employee explained she recognized the handgun as a revolver because she owns a revolver. Another store employee and a customer both testified that Vega was armed with a firearm. Two of the witnesses testified that Vega pointed the revolver at them and told them not to move. We believe this testimo-ny was sufficient for the jury to reasonably infer that the gun was real and operable.

We affirm the judgment of conviction.

SWANSTROM, J., and MCFADDEN, J. Pro Tem., concur.

---

**2.** Section 19–2520 defines a "firearm" as any weapon capable of "propelling projectiles by the action of any explosive or combustible propel-lant, and includes unloaded firearms and firearms which are inoperable but which can readily be rendered operable."