745 P.2d 1070

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jose MOLINA, Defendant–Appellant.**

No. 16830.

Court of Appeals of Idaho.

Oct. 15, 1987.

Gerald L. Weston (Gigray, Miller, Downen, Weston & Paisley), Caldwell, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Jose Molina was granted probation under a suspended four-year sentence for delivery of a controlled substance. Later, the district court revoked Molina's probation and ordered execution of the sentence. Molina appeals, presenting three issues. First, was a probation officer's warrantless search of Molina's residence consensual, and if not, was the search unreasonable? Second, did the district court err by admitting hearsay testimony during the "sentencing phase" of the probation revocation proceeding? Finally, by ordering the four-year sentence into execution, did the district judge contravene a provision in the probation order regarding the consequences of a probation violation? We affirm.

During 1984, Molina was arrested and charged with violating I.C. § 37-2732(a)(1)(B) by delivering a controlled substance, marijuana. Molina pled guilty to the charge. The district court entered a judgment of conviction, but suspended an indeterminate sentence of four years in the custody of the state board of correction. The court placed Molina on probation for three years, with the first six months being under intensive supervision. Apparently the court did not review all of the terms of probation with Molina, but the court did instruct the probation officer to be sure Molina understood all the terms of the agreement of supervision before Molina acceded to it. Subsequently, Molina signed the agreement and was released on probation.

During the ensuing months, Molina regularly submitted to urinalysis tests to detect the use of controlled substances. Some of these tests indicated marijuana use. Twice, while he was on probation, Molina admitted to his probation officer that he was using marijuana. Molina was disciplined by denial of certain privileges, and, according to his probation officer, subsequent counseling appeared to be effective.

However, within a year after being placed on probation, Molina tested positive again—this time for use of cocaine in addition to marijuana. A urine-test sample was forwarded to a state laboratory for further analysis. The state laboratory confirmed the presence of cannabinoids, a component of marijuana, in Molina's urine.

The day after receiving the results of the laboratory's analysis, four probation officers conducted a warrantless search of Molina's residence. At the time of the search, Molina was present but he did not express any consent to the search. His wife arrived while the search was in progress. The search revealed two handguns located on top of a grandfather clock, and ammunition was found in Molina's bedroom. Also, in his pockets, Molina had twelve bullets of the same caliber as one of the handguns. The weapons and ammunition were seized.

Additionally, the officers discovered numerous boxes of clothing in the bedroom and in a storage shed behind the residence. Price tags bearing the names of local clothing and department stores were attached to many of these items. A probation officer opined that the condition of this clothing indicated it was stolen property. In all, the officers seized over 120 items of clothing—the majority with price tags attached—and 1105 pairs of earrings. Prices on the tags attached to these items totaled more than $2500.

Subsequently, a report of probation violation was filed with the court. The report alleged that Molina had violated the terms of his probation by possessing firearms in contravention of a federal law prohibiting possession of firearms by convicted felons, by using cocaine and marijuana, and by possessing stolen property. At his probation revocation hearing, Molina presented evidence that the weapons were not his property and that the clothing was not

stolen. The district court deemed the ownership of the weapons to be irrelevant and also found the suggestion that the other items had been purchased by Molina's wife to be incredible. Because the court found that Molina had been in possession of weapons and stolen property, and that Molina had smoked marijuana while on probation, the court revoked Molina's probation. The sentence for delivering a controlled substance was reinstated. The court ordered Molina to the custody of the board of correction for an indeterminate period not to exceed four years.

I

■ We first address the district court's denial of Molina's motion to suppress the evidence obtained by the search. Molina asserts that he did not consent to the search and that the search was conducted in violation of his Fourth Amendment rights.[1] He further argues that the circumstances surrounding the search do not satisfy the test of reasonableness announced in State v. Pinson, 104 Idaho 227, 657 P.2d 1095 (Ct.App.1983).

A

The state contends the search satisfied the requirements of the Fourth Amendment as interpreted in Pinson. In addition, the state relies upon State v. Gawron, 112 Idaho 841, 736 P.2d 1295 (1987), and argues that Molina consented to the search when he entered into the agreement of supervision. That agreement contained the statement: "I will submit to a search of my person, residence, vehicle, and/or property, conducted in a reasonable manner and at a reasonable time, by an agent of the Division of Probation and Parole."

Molina argues that this statement, unlike the consent statement in Gawron,[2] is nei-

1. The Fourth Amendment to the United States Constitution, which was made applicable to the states by the Fourteenth Amendment reads:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

2. The probation agreement in Gawron recited: "[The] probationer does hereby agree and consent to the search of his person, automobile, real property, and any other property at any time and at any place by any law enforcement

ther a present consent to a search, nor a waiver of Fourth Amendment rights, but simply is a promise to consent to reasonable searches in the future. Emphasizing the future tense of the clause, Molina contends he was free to withhold his consent when a warrantless search was attempted, but that if it were found to be a reasonable request complying with *Pinson*, he could be found in violation of his probation only for having violated the condition by failing to consent. However, we find it unnecessary to construe this "consent" statement. Instead, for reasons to which we now turn, we believe that even if Molina did not consent to the search, the search was permissible under the *Pinson* rule.

## B

We begin our analysis by briefly reviewing the law of search and seizure as it relates to probationers. Both the Fourth Amendment to the United States Constitution and Article I, § 17 of the Idaho Constitution forbid unreasonable searches and seizures. Ordinarily, a warrantless search is unreasonable *per se*. However, there are exceptions to the warrant requirement. *See State v. Harwood*, 94 Idaho 615, 495 P.2d 160 (1972). One such exception is a knowing and voluntary consent to the search. *State v. Gawron, supra.* Another exception exists with respect to nonconsensual warrantless searches of probationers and their property by probation and parole officers. The scope of this latter exception was examined by this Court in *State v. Pinson, supra.* A search need fall within only one exception to be constitutional.

In *Pinson* we examined two propositions: (1) whether probation officers should be required to obtain warrants before conducting searches and (2) the standard by which

a court should evaluate the reasonableness of such searches. *Id.* 104 Idaho at 230, 657 P.2d at 1098. We held that society's interest in proper and efficient administration of the probation system, even when balanced against a probationer's rights, justifies some warrantless searches. We concluded that:

> [A] probation officer may make a warrantless search of a probationer if (a) he has reasonable grounds to believe that the probationer has violated some condition of probation and (b) the search is reasonably related to disclosure or confirmation of that violation.

*Id.* at 233, 657 P.2d at 1101.

In the instant case, the district court reserved ruling on Molina's suppression motion until after the probation revocation hearing was completed. Following the hearing, and after reviewing the *Pinson* decision, the judge ruled from the bench:

> [I]t's my opinion that when the probationer signed up for probation that he agreed, and did, in writing, waive his Fourth Amendment rights as they pertain to search and seizure, both of his person and of his property; and in any event I am satisfied under the evidence that the probation officers had probable cause and reasonable cause to—to go in and search that residence as well as the defendant; and that they did it under—at a reasonable time and under reasonable circumstances.[3]

Officer Hammond, a probation officer who participated in the search, testified at the revocation hearing. He explained that the search was conducted the day after a urinalysis result was received from the state laboratory. He provided no other justification for the search.[4]

---

officer, peace officer, or probation officer, and does waive his constitutional right to be free from such searches." 112 Idaho at 842, 736 P.2d at 1296.

3. Because we conclude that the *Pinson* test was satisfied in this case, we express no opinion regarding the district court's conclusion that Molina had consented, in advance, to the search.

4. A police officer, who testified after the district court ruled on the motion to suppress, indicated that he had relayed informants' tips regarding other illegal activities to one of Molina's probation officers. However, that probation officer did not testify. Officer Hammond, who did testify, did not suggest he was aware of these tips or that any such information contributed to the decision to conduct the search. Our decision to uphold the search is based solely upon the explanation provided by Officer Hammond.

The first prong of the *Pinson* test requires that a probation officer must have "reasonable grounds to believe that the probationer has violated some condition of probation...." Here, Molina's probation order and agreement required that he "[l]ive a clean, honest and temperate life," and that he "not use or possess any controlled substances unless lawfully prescribed by a licensed physician." Previous tests, plus the state laboratory confirmation received immediately prior to the search, indicated that Molina was using marijuana. Clearly, the probation officers had reasonable grounds to believe that Molina had violated a condition of probation. We hold that the first prong of the *Pinson* test was satisfied.

The second prong of *Pinson* requires that the search be "reasonably related to disclosure or confirmation of that violation." Molina argues that the urinalysis results were conclusive, and therefore no search was necessary to disclose or to confirm the violation. We are not so persuaded.

Probation officers are charged with the dual, and sometimes conflicting, obligations of assisting probationers with their rehabilitation, and of protecting society. If a probation officer suspects that a probationer has relapsed into criminal activity, the officer may conduct an appropriate investigation. I.C. § 20–219. If the officer's suspicions are confirmed, the alleged violation may be reported to the court. *Id.* We find no authority suggesting that a probation officer should be barred from conducting a thorough investigation before reporting the alleged violations. On the contrary, other courts have found substantial indications of drug use to be reasonable grounds for a search of the parolee's or probationer's residence. *See e.g., Latta v. Fitzharris*, 521 F.2d 246, (9th Cir.) *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975); *People v. Guerrero*, 85 Cal.App.3d 572, 149 Cal.Rptr. 555 (1978).

Here, the probation officers sought to determine the extent of Molina's involvement with controlled substances before pursuing disciplinary measures. Although the state laboratory's confirmation of the urine test may have been sufficient to satisfy a judge, probation authorities were not precluded from gathering additional evidence of use or possession of a controlled substance. We hold that the search of the residence was reasonably related to confirming the suspected controlled substances violation. A constitutional search is no less valid because it reveals other evidence of probation violations, rather than simply confirming a suspected violation. The "plain view" doctrine permits seizure of an item in plain view if the incriminating nature of the item is immediately apparent and the officer is in a place where he has a legal right to be when the evidence is observed. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Fowler*, 106 Idaho 3, 674 P.2d 432 (Ct.App.1983).[5] We therefore conclude that the district court did not err by refusing to suppress the evidence seized during the search.

## II

■ We turn next to Molina's argument that the district court erred by permitting a police officer to testify regarding unsubstantiated reports and rumors suggesting illegal activities at Molina's home and place of business. The officer in question testified after the court had found Molina in violation of probation. The officer's testimony was offered by the state to "enlighten the court on some of the rationale behind [the state's] sentencing recommendation...." Molina's objections on grounds of hearsay and lack of notice were overruled.

The officer related information received from anonymous sources and regular informants that suggested Molina was in regular contact with "known drug dealers and users" and that Molina was involved in

---

**5.** Molina argues only that the residential search was *per se* unreasonable because it was conducted without a warrant and without his consent. He does not challenge the scope of the search of the residence as being excessive nor does he contend that it was improper for the officers to seize evidence of other violations, found in plain view.

"high level trafficking of marijuana and cocaine." Molina characterizes this testimony as "gossip, innuendo and conjecture." The officer also described his own surveillance of Molina, which confirmed that Molina occasionally was in contact with drug dealers. After listening to this testimony, the district judge stated: "I would still, I think, have the same view of this case regardless of what he [the witness] has to say."

If the judge had relied upon the testimony in question, we would have been troubled by both the hearsay objection and the lack of notice. Although hearsay is not inadmissible per se in sentencing proceedings, there must be a reasonable basis to deem the information reliable. *Cf.* I.C.R. 32(e) (allowing hearsay in presentence reports if the investigator believes the information to be reliable). Information received from anonymous sources is unlikely to meet this standard. Moreover, it does not appear in this case that Molina had sufficient notice to prepare an explanation or rebuttal to the adverse testimony. But, after reviewing the transcript of the trial court's comments following the testimony, we conclude that the district judge was not impressed by the officer's evidence and gave it little or no weight. Therefore, we refuse to set aside the order revoking probation and judgment for execution of the sentence merely because the officer was permitted to attempt to "enlighten" the court.

## III

■ Finally, we turn to the sentence prescribed by the district court. The judge reinstated the original four-year indeterminate sentence. Molina contends that after revoking probation the court could impose no sentence harsher than six months in jail. He bases his argument upon a "special condition" included in the original judgment. That condition reads:

6. A transcript of the original sentencing proceeding was not provided to us on this appeal. The clerk's minutes, however, were included in the record.

The defendant shall be subject to serving a six month jail sentence if found to be in violation of his probation and if the Probation Officer requests of the Court that the sentence be imposed.

However, Molina's argument overlooks two other relevant circumstances. First, according to the clerk's minutes of the original sentencing proceeding found in the record on this appeal,[6] the judge discussed the six-month "special condition" of the probation plan, in open court. The judge explained that if Molina violated his probation and the court was not satisfied that the six-month sentence was sufficient, then the court could revoke probation and cause the defendant to serve the full four-year sentence. Molina has not asserted that these minutes are inaccurate. Second, consistent with the judge's explanation as reflected in the clerk's minutes, the judgment itself included the following statement immediately after the "special condition" pointed out to us by Molina:

The terms of defendant's probation may be revoked, modified or extended at any time by the Court and, in the event of any violation of the conditions hereof, during the period of probation, the Court may revoke this Order and cause *the sentence* to be executed. (Emphasis added.)

After reviewing the record, we are satisfied that the district judge made no binding promise to Molina to impose only a six-month jail term for violating his probation. On the contrary, the judge was simply warning Molina that a jail term of six months could be imposed virtually upon the recommendation of a probation officer.[7] The court explicitly reserved the option of reinstating the harsher suspended sentence. Therefore, we hold that the court committed no error by reinstating the four-year sentence as an alternative to six months in jail.

7. We express no opinion regarding the authority implicitly vested in probation officers by the procedure described by the district court.

The judgment and order revoking probation and for execution of the four-year sentence is hereby affirmed.

BURNETT and SWANSTROM, JJ., concur.