950 P.2d 1299

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Steven Neal PETERS, Defendant–Appellant.**

No. 23457.

Court of Appeals of Idaho.

Dec. 24, 1997.

Sallaz Law Offices, Chtd., Boise, for appellant. Thomas R. Henry argued.

Alan G. Lance, Attorney General; Kenneth M. Robins, Deputy Attorney General, Boise, for respondent. Kenneth M. Robins argued.

SCHWARTZMAN, Judge.

Steven Neal Peters appeals from the judgment of conviction entered following his conditional plea of guilty to the offenses of possession of methamphetamine, I.C. § 37–2732(c)(1), and possession of marijuana, I.C. § 37–2732(c)(3). The sole issue raised on appeal challenges the district court's denial of Peters' motion to suppress. We affirm.

## I

### FACTS AND PROCEDURAL BACKGROUND

In 1996, Peters was on parole from an earlier felony conviction, and was under the supervision of the Idaho Department of Correction. Peters' direct supervisor was Officer Raul Morin. As a condition of his parole, Peters signed an agreement which provided:

> Parolee will submit to a search of person or property, to include residence and vehicle, at any time and place by any agent of Field and Community Services and s/he does waive constitutional right to be free from such searches.

Officer Morin received information from another parole officer that Peters had been in the Boise area and involved with drug users. Also, on March 12, 1996, Morin received the results of Peters' urinalysis, which tested positive for methamphetamine. Based on this information and his having recently observed someone whom he believed was under the influence of drugs during a probation home visit with Peters, Morin decided to conduct a search of Peters' residence on March 21st. Officer Morin delegated responsibility to a fellow probation officer, Jim Pishl, to search the house where Peters was currently residing.[1] It is the search of this residence which is the subject of this appeal.

Officer Pishl enlisted members of the City County Narcotics Unit to aid him in the search. When the team approached the residence, Peters was outside, standing by a car. The officers entered the house and began to search. The narcotics unit's dog discovered methamphetamine and marijuana in some of Peters' personal belongings in the bedroom of Karen Grigg, who was the owner of the residence.

After Peters was charged with possession of methamphetamine and possession of marijuana, he filed a motion to suppress, arguing that the evidence obtained in the search of the residence should be suppressed because "the officers lacked reasonable suspicion for the search." An evidentiary hearing was

held, whereupon the district court denied the motion. Peters subsequently entered conditional pleas of guilty to possession of methamphetamine and possession of marijuana, but reserved the right to appeal the district court's order denying Peters' motion to suppress.

## II

### ANALYSIS

#### A. Standard Of Review

When evaluating the district court's denial of a motion to suppress, the proper standard of review is one of deference to the factual findings of the district court unless they are clearly erroneous, while giving free review to the trial court's determination of whether constitutional requirements have been satisfied in light of the facts found. *State v. Vasquez*, 129 Idaho 129, 130, 922 P.2d 426, 427 (Ct.App.1996); *State v. Pick*, 124 Idaho 601, 603, 861 P.2d 1266, 1268 (Ct. App.1993). The determination of what is reasonable, in the search and seizure context, is a question of law over which we exercise free review. *State v. McIntee*, 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App.1993); *State v. Heinen*, 114 Idaho 656, 658, 759 P.2d 947, 949 (Ct.App.1988).

#### B. Peters Has Standing To Contest The Search

Despite the fact that the district court implicitly found that Peters had standing to contest the search of Grigg's residence, the state argues that Peters has failed to demonstrate that he had a legitimate expectation of privacy in the bedroom from which the probation officers seized the controlled substances.

In order to suppress the evidence that was seized, Peters has the threshold burden of demonstrating that his legitimate privacy interests were infringed. *State v. Holman*, 109 Idaho 382, 386, 707 P.2d 493, 497 (Ct.App.1985). We note initially that the

---

1. Officer Morin had first searched a fifth-wheel trailer owned by Peters. That search turned up some drug-related paraphernalia and guns.

Fourth Amendment protects people, and not places. *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (declining to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched, and thus holding that defendants charged with crimes of possession may only claim the benefit of the exclusionary rule if their *own* Fourth Amendment rights have been violated). Therefore, because the Fourth Amendment's protection against unreasonable searches and seizures is a *personal* protection, in order to contest a search of Grigg's home (specifically, her bedroom), Peters must demonstrate that he had a legitimate expectation of privacy in the premises searched. *See State v. Vasquez*, 129 Idaho 129, 131, 922 P.2d 426, 428 (Ct.App.1996).

The state cites *State v. Cowen*, 104 Idaho 649, 651, 662 P.2d 230, 232 (1983), for the proposition that a person asserting standing to suppress must demonstrate some proprietary interest in the premises searched or some other interest giving a reasonable expectation of privacy. We do not read this requirement to mean that a person must actually possess some legally recognized property interest in the premises. Rather, in light of the United States Supreme Court's decisions in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), and *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the underlying premise is that, "one who has no ownership or possessory interest *and is not a resident but who is merely paying a brief, casual visit,* has no reasonable expectation of privacy in a residence." *Vasquez*, 129 Idaho at 131, 922 P.2d at 428 (emphasis added).

■ Peters was far more than a mere casual visitor. He was living with Grigg, as found by the district court: "[Peters] resided at 220 W. Georgia in Nampa [Grigg's address], and had access to the entire residence as a matter of fact." We will not overturn the district court's finding, and thus hold that Peters, as a current resident of the home searched, has standing to contest the search of the residence.

We now turn to an analysis of Peters' claim that his rights under the Fourth Amendment of the United States Constitution and Art. I, § 17 of the Idaho Constitution were violated.

## C. Peters' Right To Be Free From Unreasonable Searches Was Not Violated

■ The Fourth Amendment of the United States Constitution and Art. I, § 17 of the Idaho Constitution forbid unreasonable searches. A warrantless search is *per se* unreasonable and the fruits of that search are usually suppressible unless the search falls within certain specific and well-delineated exceptions. *State v. Harwood*, 94 Idaho 615, 617–18, 495 P.2d 160, 162–63 (1972). One of the exceptions to the warrant restriction is a search conducted pursuant to the administration of probation or parole. *State v. Vega*, 110 Idaho 685, 687, 718 P.2d 598, 600 (Ct.App.1986); *State v. Pinson*, 104 Idaho 227, 231–32, 657 P.2d 1095, 1099–1100 (Ct. App.1983). But, for this exception to be applicable, the state must show that the warrantless search was *reasonable*, that is, a parole officer may make a warrantless search of a parolee and his residence if the officer has reasonable grounds to believe that the parolee has violated some parole condition and the search is reasonably related to the disclosure or confirmation of that violation. *Pinson*, 104 Idaho at 233, 657 P.2d at 1101. A parole officer may also enlist the aid of the police when conducting a justified search. *Id.*

■ However, it is important to note that as a condition of his parole, Peters had signed an agreement which expressly waived his right to be free from searches and seizures; neither *Vega* nor *Pinson* addressed the validity of a warrantless search when a parolee or probationer has expressly waived his constitutional right to be free from warrantless searches.[2] The Idaho Supreme

---

2. There has been no question raised here as to the validity of Peters' waiver. The district court found that the parole agreement was a valid waiver of Peters' Fourth Amendment and Art. I, § 17 rights against unreasonable search and seizure. Furthermore, we note that Peters initialed the waiver provision in his probation agreement, and signed the agreement itself. The parole

Court has upheld the constitutional validity of such waivers. *State v. Gawron*, 112 Idaho 841, 736 P.2d 1295 (1987). In *Gawron*, the Court determined that because the probationer had expressly waived his constitutional right to be free from warrantless searches, both *Vega* and *Pinson* were inapplicable. Instead, the Court relied on *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and *Zap v. United States*, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946), to hold that the waiver was a form of consent:

> Gawron contends that the probation condition which requires submission to warrantless searches constitutes an unreasonable invasion of his fourth amendment rights. However, we hold that such persons conditionally released to societies have a reduced expectation of privacy, thereby rendering intrusions by government authorities "reasonable" which otherwise would be unreasonable or invalid under traditional constitutional concepts. The scope of the search in the instant case may well have exceeded the permissible limits announced in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). However, that decision acknowledged the existence of "well recognized exceptions" to the general rule requiring a warrant in order to conduct a house search. One of those exceptions set forth in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), is "*a search to which an individual consents .... Zap v. United States*, 328 U.S. 624 [66 S.Ct. 1277, 90 L.Ed. 1477] (1946)."
>
> \* \* \* \* \* \*
>
> Since we base our determination in the instant case upon Gawron's *consent to warrantless searches*, both *Vega* and *Pinson* are inapplicable to the instant case....

*Gawron*, 112 Idaho at 843, 736 P.2d at 1297 (emphasis added) (some citations omitted).

Thus, because Gawron's probation waiver was deemed to be the equivalent of "con-

sent," the evidence procured via the warrantless search of Gawron's residence was held to be legally obtained and admissible, regardless of whether the search would have otherwise been violative of Gawron's rights against unreasonable searches and seizures.

In the instant case, the district court denied the motion to suppress on the basis that the search was "reasonable" under the *Vega–Pinson* test. Since we follow the path laid out by the Idaho Supreme Court in *Gawron*, we need not address the reasonableness of the search. Because Peters made an express, valid waiver of his constitutional rights to be free from warrantless searches and seizures, Peters is deemed to have "consented" to the search of his residence. Accordingly, we rely on the consent exception to validate the search in this case.

### D. Conclusion

The district court, although it arrived at its conclusion by employing a different methodology, did not err in denying Peters' motion to suppress. The conviction and the orders of the district court are in all respects affirmed.

LANSING, C.J., and PERRY, J., concur.

agreement also reflects that Peters was instructed on each of the requirements and conditions of his parole by his parole officer. It is thus clear that Peters made a knowing and voluntary waiver of his right to be free from searches and seizures as a condition of being placed onto parole. Restrictive conditions such as this waiver may be imposed by the courts in order to foster rehabilitation and protect public safety. *See State v. Josephson*, 124 Idaho 286, 288, 858 P.2d 825 (Ct.App.1993).