(179 P.3d 472)
No. 97,237

STATE OF KANSAS, *Appellee*, v. TYRONE EDWARDS, *Appellant*.

Opinion filed March 28, 2008.

*Theresa L. Barr,* of Lawrence, for appellant.

*Ann L. Smith,* of Lenexa, *Charles E. Branson,* district attorney, and *Paul J. Morrison,* attorney general, for appellee.

Before GREEN, P.J., GREENE and LEBEN, JJ.

LEBEN, J.: Tyrone Edwards claims that statements he made to police officers should have been suppressed because they came after he was illegally arrested. He claims the arrest was illegal because the officers didn't have physical possession of his parole officer's written order that he be arrested. But other statutes that authorize arrests on a warrant do not require that the arresting officer have the warrant in physical possession, and we likewise do not find that the physical possession of the order is a requirement in the statute that allows parole officers to order an arrest.

Edwards separately raises several other challenges to his conviction for aiding a felon and possession of a firearm by a felon. He claims that a new trial should have been granted because evidence was discovered after trial that a key witness had drugs in her system that night; a new trial was not called for, however, since testimony had already indicated that the witness had used cocaine that night. He also raises three claims that he did not object about in the district court—that the charging document was insufficient, that the district court gave an inaccurate answer to a jury question, and that the prosecutor improperly commented on the credibility of a

witness. We believe the charging document was sufficient, the trial judge's answer to the jury was appropriate, and the prosecutor's comment was within the bounds of appropriate conduct at trial. We affirm Edwards' convictions because we have found no substantial error in the trial and proceedings in the district court.

## I. *Edwards Was Properly Arrested Even Though the Arresting Officer Did Not Have Physical Possession of the Arrest Order.*

Lawrence police officers arrested Edwards based on a written arrest-and-detain order issued by his parole officer. The parole officer sent a copy of the order to the Lawrence police by facsimile. One detective received the fax and told another detective it had been received; that other detective then arrested Edwards. The arresting officer did not have the faxed copy in his personal possession at the time he arrested Edwards, and the officers did not have any original document signed by the parole officer because it had been sent by fax.

Edwards argues that because the arresting officer did not have physical possession of the arrest order, the arrest was not authorized under the statute governing arrest orders by parole officers. That statute, K.S.A. 2007 Supp. 75-5217(a), provides that a parole officer "may deputize any other [law enforcement] officer with power of arrest" over a parolee "by giving such officer a written arrest and detain order setting forth that the released inmate, in the judgment of the parole officer, has violated the conditions of the inmate's release." Edwards argues for a strict interpretation of the phrase "giving *such officer* a *written* . . . order." He contends that it means just what it says—the *arresting* officer must have the written order in his or her possession when making the arrest.

Statutory interpretation must be approached with care so that statutes are construed to avoid unreasonable results. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006). Statutory interpretation presents a question of law, so our consideration is not restricted by the interpretation provided by the district court. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

Edwards raises two supporting points in his argument. First, he says that "criminal statutes" are to be strictly construed against the State. Second, he says that the Kansas Supreme Court's decision in *State v. Anderson*, 281 Kan. 896, Syl. ¶ 6, 136 P.3d 406 (2006), underscores the requirement that the order be in the physical possession of the arresting officer. We do not find Edward's arguments persuasive.

The rule of lenity in criminal cases is rooted in the notion that people should have fair notice of conduct that is criminal. See *State v. Busse*, 252 Kan. 695, 699, 847 P.2d 1304 (1993). Thus, it is applied broadly to statutes that create penalties, including statutes defining crimes. It has no application here to a statute determining the steps a parole officer needs to take to authorize other law-enforcement officers to arrest a parolee. Unlike the citizen who may consult the statutes to determine what conduct is legal or criminal, parolees do not modify their behavior based upon a statute's direction about how one law-enforcement officer can gain the assistance of others.

The *Anderson* case did not reach the question we have before us. In *Anderson*, there was no written authorization at all. Thus, the court easily determined that a verbal arrest authorization did not comply with the statutory requirement of a written order. The court did not reach the question of whether that written order also had to be in the arresting officer's physical possession at the time of arrest. 281 Kan. at 911-12. That is the question now before us.

We find that Edwards' interpretation of the statute is unreasonable and that the statutory language does not require all potential arresting officers in the field to have physical possession of the arrest order. Two background assumptions in Kansas law run counter to Edwards' argument. First, knowledge of one police officer is usually imputed to other officers, *State v. Toney*, 253 Kan. 651, 657, 862 P.2d 350 (1993), a background assumption the legislature was surely aware of. See *Anderson*, 281 Kan. at 912 (legislature is presumed to know the law). Second, several other statutes regarding the issuance and execution of arrest warrants do not require physical possession of the warrant by the arresting officer. See K.S.A. 22-2401(b) (an officer may arrest a person if "[t]he

officer has probable cause to believe that a warrant for the person's arrest has been issued" for a felony offense); K.S.A. 12-4212(a)(2) (an officer may arrest a person if "[a] warrant for the person's arrest has been issued by a municipal court in this state"); K.S.A. 22-2305(3) (for warrants issued by court, "officer need not have the warrant in his possession at the time of the arrest").

With these background principles in mind, we return to the statutory language, which is the most important focus in statutory interpretation. The statute allows the parole officer to authorize "any other officer" to arrest a parolee "by giving such officer a written arrest . . . order." K.S.A. 2007 Supp. 75-5217(a). If we interpret that strictly, the parole officer must physically "give" the written order to "such officer," which we would interpret to mean the arresting officer. But what would that mean in practice? An already overworked parole officer would either have to head out to Lawrence and go officer by officer through the force, as all field officers reported for their various shifts, or that parole officer could sit by the fax machine and personally fax it to each officer. The situation would be even more untenable if the parole officer had equal reason to believe that the parolee might be in either Dodge City, Pittsburg, or Lawrence and had to go through this routine with all police officers in all three cities. Police officers would also have to carry around a file of arrest orders or warrants at all times in order for the necessary document to be in their physical possession whenever they made an arrest. This is an unreasonable interpretation of the statute.

The language of the statute might have been more artfully crafted: it is indeed consistent with the words used in the statute to interpret the phrase "by giving such officer" as only referring to the arresting officer. But it is not a reasonable construction given the background considerations we have described and the practicalities of police operations. We conclude that the phrase "giving such officer" incorporated the well-known background principles of constructive knowledge and how police departments work as a group rather than a bunch of lone officers. This holding is more consistent with both the words used and a reasonable interpretation of those words. The order here was transmitted by the parole

officer to the Lawrence Police Department, where one of its officers reviewed it. That officer then advised another of the contents of the order. The arresting officer was authorized to arrest Edwards once the written arrest order had been given to the Lawrence Police Department and reviewed there by another officer.

Edwards raises one additional claim that the arrest order was invalid. He contends that the order alleged that he was in "constructive violation of a firearm," but that this does not state either a crime or a violation of his parole. Thus, Edwards argues that the arrest order was invalid on its face. Our record does not reveal the terms of Edwards' probation, and the statute authorized the parole officer to issue an arrest order when "in the judgment of the parole officer, [the inmate] has violated the conditions of the inmate's release." K.S.A. 2007 Supp. 75-5217. The record is therefore not sufficient to judge Edwards' claim about the validity of the arrest order; without an adequate record, a claim of error fails on appeal. *State v. Paul*, 285 Kan. 658, 670, 175 P.3d 840 (2008).

II. *The District Court Properly Denied a New Trial Because There Was No Newly Discovered Evidence That Raised a Reasonable Probability That a Different Trial Result Would Occur.*

After trial, Edwards learned that some information the police had provided to the prosecutor had not been given to his attorney. Edwards sought a new trial based upon this newly discovered evidence, and the district court denied that motion.

We review the district court's decision for abuse of discretion. A two-part test is applied to determine whether a new trial is warranted for newly discovered evidence. First, the defendant must show that the new evidence could not have been produced at trial by the defendant acting with reasonable diligence. Second, the defendant must show a reasonable probability that there would be a different trial result on retrial with the additional evidence. *State v. Harris*, 279 Kan. 163, 176, 105 P.3d 1258 (2005). To place this argument in context, we must first consider the evidence upon which Edwards was convicted.

Edwards had been dating two women, Jennifer Clarke and Nicole Livingston. On September 8, 2005, he went with Livingston

to Clarke's residence; Livingston and Clarke had exchanged threats by telephone earlier that day. Livingston testified that as she and Edwards were approaching Clarke's residence, Edwards handed her a gun, which she placed in her waistband.

Livingston and Clarke continued their argument after Edwards and Livingston were inside Clarke's home. Clarke said that Edwards encouraged the fight. Livingston and Clarke began pushing each other, and at some point Clarke pulled a knife. Livingston then pulled out the gun to scare Clarke into backing off. As Clarke backed away, the gun discharged, and Clarke was shot in the abdomen.

Edwards and Clarke then left the residence. As they were leaving, Edwards took the gun from Clarke and wiped it off. The two then took the gun to Edwards' brother and left it with him. They next went to Livingston's apartment, but Edwards, who was driving, parked his car a short distance away from the apartment. Edwards went inside to retrieve some items for Livingston. They ended up at a local motel that evening. Livingston turned herself in to police the next morning. Edwards was arrested at the motel later that morning. He told police he'd never before seen the gun Livingston used to shoot Clarke. He said he had encouraged Livingston to turn herself in, but that he had also told her that "she was his lady and that he was going to stand behind her whatever she wanted to do, if she wanted to go on the run."

Based upon this evidence, Edwards was convicted by a jury of aiding a felon and possession of a firearm by a felon. To convict Edwards of aiding a felon, the State had to prove that Livingston had committed a felony (either attempted second-degree murder or reckless aggravated battery) and that he had knowingly harbored, concealed, or aided her with the intent to help her avoid arrest. See K.S.A. 21-3812(a). To convict Edwards of possession of a firearm by a felon, the State had to prove that Edwards knowingly possessed a firearm and that he had been convicted of a felony within 10 years of the date of possession. See K.S.A. 21-4204(a)(4).

Before trial, Edwards was not provided with evidence that contained the results of Clarke's blood test on the night of the shooting showing drugs in her system, a phone log showing calls between

Livingston and Clarke on the day of the shooting, and evidence of drugs found in the apartments of both Livingston and Clarke. The district court determined that even if Edwards would have had this information before trial, it would not have produced a different outcome. The district court noted that at the trial, there was testimony about Edwards' statements after his arrest regarding his willingness to aid Livingston. There also was evidence about Edwards' and Livingston's actions after the shooting that supported the aiding and abetting charge. And there was testimony from both women that Edwards had been in possession of the gun at times before the shooting. None of this evidence would have been impacted by any of the newly discovered evidence.

In addition to these reasons recited by the district court, we note that there already was evidence presented to the jury that Clarke had used cocaine on the night of the shooting and that the two women had exchanged phone calls that day. The new evidence would have been redundant. Further, although evidence of Clarke's drug use on the night of the shooting was relevant to the reliability of her testimony about seeing the gun that night, the district court noted that her testimony on the gun-possession charge was that she had seen Edwards with that gun more than once before the night of the shooting. Last, evidence that drugs were in Livingston's apartment—which she shared with Edwards—was not relevant to her credibility as a witness, especially because the evidence did not indicate any drug use that would have impaired her memory of the events on the night of the shooting.

The district judge who ruled on the new-trial motion also presided over the trial. She concluded that there was not a reasonable probability of a different result in a retrial with this new evidence included. The record supports that conclusion here. The district court was well within its discretion to deny the motion for new trial.

III. *The District Court Properly Denied a Post-Trial Challenge to the Charging Document.*

After he was convicted, Edwards filed a motion to arrest judgment, claiming that the document charging him was insufficient.

He argues that the charging document did not state the underlying felony committed by Livingston, which he says is an essential element of the charge against him.

Our standard of review on this issue is determined by the late manner in which Edwards raised this issue. He was convicted on March 7, 2006, but he did not file his motion to arrest judgment until March 22, 2006. K.S.A. 22-3502 only provides for motions to arrest judgment in the trial court when they are filed within 10 days of the conviction. Thus, his motion was untimely.

The issue of sufficiency of the charging document may still be raised: it is an issue that may be raised for the first time on appeal. *State v. Hall*, 246 Kan. 728, Syl. ¶ 13(g), 793 P.2d 737 (1990) *overruled on other grounds Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003). In that event, however, we apply a common-sense rule under which a charging document is sufficient if it would be fair to require the defendant to defend on the stated charge, even if an essential element is missing from the document. *Swenson v. State*, 284 Kan. 931, 941, 169 P.3d 298 (2007). In making a common-sense judgment about fairness, we look at the entire record. *Zabrinas v. State*, No. 93,339, slip op. at 5, unpublished opinion filed June 23, 2006. Based on that review, we find no harm in a technical defect in the charging document unless it prejudiced the defendant's ability to prepare a defense, impaired the defendant's ability to plead the conviction in some later proceeding, or limited the defendant's substantial rights to a fair trial. *Swenson*, 284 Kan. at 941.

Even though our record once again has some gaps, it clearly shows that Edwards knew quite well what underlying felony Livingston was charged with. Edwards saw Livingston shoot Clarke. A video was shown to the jury of an hour-long interview of Edwards by police. That video is not in the record, but the prosecutor summarized part of it in closing argument. The prosecutor noted that Edwards was on the telephone with someone during that time saying that Livingston was charged with attempted second-degree murder, but that "she's not going to end up getting convicted of that. What's probably going to happen is they will plea[d] it down to aggravated battery."

The district judge noted this telephone comment by Edwards when she concluded that Edwards had not been prejudiced by any deficiency in the charging document. She also noted that evidence about the shooting had been presented at the preliminary hearing so that Edwards was able to prepare his defense. At trial, the jury instructions told the jury that the State claimed Livingston either committed attempted second-degree murder or reckless aggravated battery; the jury was told the elements for each of those felonies. Edwards' attorney neither objected to those instructions nor expressed any surprise about them. The defendant has not shown any harm to his rights from the way the charging document framed the issues in this case.

IV. *The District Court Made No Error in Answering a Question from the Jury.*

Edwards argues that the district court provided an inadequate answer to a question sent by the jury during deliberation. Our review of this issue is hampered because neither the question nor the answer is included in the record on appeal. An appellate brief does not substitute for the record on appeal. Kansas Supreme Court Rule 6.02(f) (2007 Kan. Ct. R. Annot. 37); *City of Mission Hills v. Sexton*, 284 Kan. 414, 435, 160 P.3d 812 (2007).

From the trial transcript, we know that the jury asked some question related to the meaning of the word "avoid" in an instruction that defined the crime of aiding a felon. That instruction told the jury that Edwards must have acted "with the intent that Nicole Livingston would avoid or escape from arrest." The transcript indicates that after receiving a question from the jury, the judge gave the question to attorneys for both sides and took their suggestions for possible answers. The transcript then indicates that everyone agreed the judge would tell the jury that "'avoid' is to be given its common meaning" and that "[f]actual determinations are for the jury." Neither party objected to this instruction.

When a jury instruction is given without objection, reversal based on error in that instruction is proper only if there is a real possibility that the jury would have returned a different verdict absent the error. *State v. Hoge*, 276 Kan. 801, 817, 80 P.3d 52

(2003). In addition, as we have already noted, without an adequate record, a claim of error fails on appeal. *Paul*, 285 Kan. at 670. On the record before us, Edwards has shown neither that an error was made nor that any different verdict would have resulted had the jury been given a different answer to its question.

V. *The Prosecutor Did Not Exceed the Scope of Permissible Witness Examination.*

Edwards' final argument is that the prosecutor violated rules against commenting on the credibility of a witness during the questioning of Livingston. Livingston had entered into a plea bargain in which she agreed to plead no contest to reckless aggravated battery, a severity-level-5 felony. Under the plea agreement, Livingston was required to testify truthfully in Edwards' trial. In addition, her standard sentence under the sentencing guidelines was 32 months in prison, though her criminal-history score placed her in a border box, which would allow the court to sentence her either to prison or to grant her probation. The plea agreement allowed the State to ask for her to be sent to prison, and it allowed her to seek probation.

The prosecutor began his questioning of Livingston by establishing the terms of the plea agreement and Livingston's understanding of it. At the end of that exchange, when the prosecutor asked her about her obligation to testify truthfully, Edwards contends that the prosecutor's questions "were tantamount to the prosecutor commenting on [her] credibility," which is not allowed. See *State v. Pabst*, 268 Kan. 501, 507-11, 996 P.2d 321 (2000). The prosecutor asked two questions along this line:

- "[A]s part of that plea, have you agreed to testify truthfully today?"
- "And so, the deal isn't contingent upon you saying a certain thing, it's upon you being truthful, correct?"

Edwards' counsel did not object to these questions, but allegations of prosecutorial misconduct are reviewed on appeal even without a timely objection. *State v. Albright*, 283 Kan. 418, 428, 153 P.3d 497 (2007). Even so, the comments of a prosecutor must

be outside the wide latitude normally given when discussing the evidence. 283 Kan. at 428.

The questions asked here did not even constitute a comment on the evidence—they were questions designed to establish the terms of the plea bargain. The existence and terms of that agreement were surely relevant to the jury in assessing the credibility of Livingston's testimony. We find nothing improper here in the limited questioning the prosecutor used to establish the terms of that agreement and Livingston's understanding of them.

The judgment of the district court is affirmed.