No. 125,580

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS GOFORTH,
*Appellant.*

SYLLABUS BY THE COURT

1.

The Fifth Amendment to the United States Constitution forbids a State from compelling self-incriminating statements as a condition of probation or supervised release, and then using the statements to prosecute a new crime.

2.

A Fifth Amendment privilege must generally be claimed when self-incrimination is threatened. But an exception applies when an individual's assertion is penalized so as to foreclose a free choice to remain silent, such as when the State asserts that invocation of the privilege would lead to revocation of probation.

3.

When police involvement is nothing more than technical assistance in response to a parole officer's request to search a phone, K.S.A. 22-3717(k)(2) applies (permitting search of person on supervised release by parole officer with or without cause) and K.S.A. 22-3717(k)(3) does not apply (permitting search of person on supervised release by law enforcement officer with reasonable suspicion).

1

Appeal from Sedgwick District Court; TYLER ROUSH, judge. Oral argument held September 17, 2024. Opinion filed November 22, 2024. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.

GARDNER, J.: Following his release from prison for exploitation of a child convictions, Thomas Goforth participated in a polygraph examination as a condition of his postrelease supervision. Goforth's responses to two of its questions resulted in a warrantless search of Goforth's phone. After officers discovered pornographic images of children on the phone, the State charged Goforth with new crimes—five counts of exploitation of a child by possessing a visual depiction. Goforth moved to suppress the evidence, arguing it stemmed from compelled, self-incriminating statements in violation of the Fifth Amendment to the United States Constitution. The district court denied that motion, and a jury convicted Goforth on all counts. Goforth appeals, arguing the admission of the evidence at trial violated the Fourth and Fifth Amendments and that his convictions are multiplicitous. Finding no reversible error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

After being released from prison for exploitation convictions, Thomas Goforth started serving his postrelease supervision. Given the nature of his offense, Goforth was required—as a part of his postrelease supervision—to participate in a sex offender treatment program (SOTP). He was assigned a supervising officer, Alexis Olave, and attended an intake, where he learned the rules associated with the program.

The SOTP required Goforth to submit to polygraph examinations and to follow several restrictions related to his internet use. For example, Goforth could not possess any type of pornography or access social media without prior approval. Goforth signed an agreement which explained that if he violated these or other terms of his postrelease supervision, he risked arrest and additional imprisonment, pending a hearing before the Kansas Prisoner Review Board to determine whether his postrelease supervision should be revoked.

For a time, Goforth complied with his postrelease supervision after his release—participating in treatment, attending required meetings, and maintaining employment. Yet during his first polygraph examination about seven months into his postrelease supervision, Goforth's answers to two questions caused Olave concern. He gave "significant reactions" to questions about him "accessing the Internet for any reason that would be in violation of his supervision" and achieving sexual gratification while thinking about anyone underage. Olave decided to have Goforth's home and phone searched, so she asked Brandon Bansemer (a special agent for the Kansas Department of Corrections' Enforcement, Apprehensions, and Investigations Unit) to do so.

Bansemer drove to Goforth's job and seized his phone. Bansemer had a signed consent form from Goforth to search his residence, and he got a list of Goforth's electronic devices and his password and username for his Google account. With the help of two other agents, Bansemer searched Goforth's home. He recovered the listed electronics and transported them to two police officers who worked for the Internet Crimes Against Children (ICAC) task force. Bansemer asked them to search Goforth's phone, warning them that it might contain child pornography.

One of the officers, Jennifer Wright, regularly performed digital forensic examinations and other searches for parole officers as a part of her duties on the ICAC task force. She first did a cursory search of Goforth's phone to determine whether a

3

search warrant was needed. Upon finding a pornographic picture of a toddler, she stopped her search and notified John Ferreira (the assigned Homeland Security case agent) and Shay Carpenter (an ICAC detective) that she needed a search warrant. When she got a warrant, she resumed her search and found additional child pornography pictures.

After Wright's discovery, Goforth agreed to a police interview. Bansemer took him to the police station where Ferreira interviewed him. Goforth then admitted that he had downloaded the images on his phone and had used them to masturbate. Ferreira arrested him. The State charged Goforth with five counts of sexual exploitation of a child by "possessing any visual depiction of a child under 18 years of age shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or any other person," in violation of K.S.A. 2017 Supp. 21-5510(a)(2).

Goforth moved pretrial to suppress the evidence found on his phone, arguing that compelled statements he had made during a required polygraph examination gave rise to the search, in violation of his privilege against self-incrimination. At the hearing on the motion, Goforth relied primarily on *United States v. Von Behren*, 822 F.3d 1139 (10th Cir. 2016), to support his claim of a Fifth Amendment violation. The State countered that K.S.A. 22-3717(k)(2) controlled the issue. This statute provides that any person on parole or postrelease supervision is subject to search by parole or other Kansas Department of Corrections (KDOC) officers without cause. The State also claimed that the polygraph questions were not incriminatory, so they did not implicate Goforth's Fifth Amendment rights.

The district court agreed that the polygraph questions were not incriminating and that the officers could search and seize Goforth's property without cause under K.S.A. 22-3717(k)(2) and as stated in Goforth's postrelease supervision. The district court also found that the officers had a warrant for all but the first photo found on Goforth's phone.

4

The district court thus found it unnecessary to conduct a *Von Behren* analysis, and denied Goforth's motion.

A jury later convicted Goforth of five counts of sexual exploitation by possessing a visual depiction. Goforth moved for a departure sentence but the district court denied it, sentencing him to a presumptive term of 256 months in prison for his first count and 68 months for the remaining counts, to run concurrent. Goforth timely appeals, challenging the district court's denial of his motion to suppress his statements and other evidence obtained as the result of his polygraph examination.

## I. PROCEDURAL MATTERS SHAPE OUR REVIEW

The State argues that Goforth's arguments must be dismissed for several procedural reasons, as well as on the merits. We first address these procedural hurdles.

### A. *The District Court's Ruling Establishes Jurisdiction*

The State first alleges that this court lacks jurisdiction to hear this appeal. Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022). When the record shows a lack of jurisdiction, we must dismiss the appeal. *In re I.A.*, 313 Kan. 803, 805-06, 491 P.3d 1241 (2021).

The State argues that Goforth failed to adequately raise his Fifth Amendment argument and receive a ruling on it. In response to Goforth's constitutional claims in the district court, the State argued that K.S.A. 22-3717(k) controlled the issue, and the district court agreed. That statute allows searches of persons or the property of persons on parole or postrelease supervision without cause. The State argues that the district court thus found it unnecessary to address *Von Behren* when deciding Goforth's suppression

5

request, so Goforth failed to obtain a ruling on his constitutional claim, which divests this court of jurisdiction. But to support its lack of jurisdiction argument, the State cites solely *State v. Huff*, 278 Kan. 214, 217, 92 P.3d 604 (2004), which states that an appellate court obtains jurisdiction only over the rulings identified in the notice of appeal. And it concedes that the notice of appeal covered the suppression issue generally. The State's argument more accurately claims lack of preservation, not lack of jurisdiction. See *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020) (decision to review unpreserved claim under exception is a prudential one).

At any rate, we find that Goforth properly raised his Fifth Amendment argument and received a ruling on it. Goforth moved to suppress his statements and other evidence "based on the polygraph examination." He broadly claimed that the evidence requiring suppression included "the search of [his] cell phone and all oral, written or other communications, confessions, statements, whether inculpatory or exculpatory, alleged to have been made by [him] prior to, at the time of, or subsequent to, his arrest in [this] case." He argued that police obtained this evidence in violation of his Fourth and Fifth Amendment rights and corresponding State constitutional protections, but he focused his argument almost entirely on the Fifth Amendment. As support for that claim, Goforth relied on *Maness v. Meyers*, 419 U.S. 449, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975), and *Von Behren*. He raises the same argument on appeal.

The district court considered these arguments, held a hearing, then gave this rationale for denying Goforth's motion: (1) Under K.S.A. 22-3717(k), the postrelease officer could seize his property and look at it any time, day or night, with or without cause; (2) the questions asked during the polygraph, which triggered the underlying searches, were not incriminating; and (3) after the polygraph examination, police obtained a search warrant for Goforth's phone. In making these findings, the district court ruled on Goforth's constitutional claims.

6

True, the district court first found that the officers properly obtained the challenged evidence based on K.S.A. 22-3717(k)(2). Relatedly, the district court also found the purpose of the exclusionary rule—to thwart improper police actions—would not be served by granting Goforth's suppression request because the statute grants express authority to search without cause. This analysis touched on Fourth Amendment principles but did not necessarily answer Goforth's Fifth Amendment argument.

Yet after agreeing with the State that K.S.A. 22-3717(k) allowed the search of Goforth and his phone, the district court "secondarily adopt[ed]" the State's argument that the questions that Goforth submitted to were not "in and of themselves incriminatory because they did not ask him [whether he had] any illegal materials on [his] phone." Its analysis then addresses in eight paragraphs the Fifth Amendment claim that the State contends is not addressed. The district court found *Von Behren* distinguishable, found Goforth's supervisory agreement comparable to the one in *United States v. Richards*, 958 F.3d 961, 967-68 (10th Cir. 2020), found the government had not taken the extra and impermissible step of compelling the defendant to incriminate himself, and then concluded: "But I don't need to reach that step because I agree with the arguments from [the prosecutor]."

That the court's ruling was stated in the alternative, or secondarily, matters not. It sufficiently addressed and disposed of Goforth's Fifth Amendment claim to allow our review.

B. *Goforth's Appellate Briefing of K.S.A. 22-3717(k)(2) Is Adequate*

The State next contends that Goforth fails to challenge the district court's decision based on K.S.A. 22-3717(k)(2) and thus abandons any challenge to its suppression decision.

7

We are unpersuaded. Goforth challenges the district court's reliance on this statute as his second issue on appeal. Goforth argues that the State failed to show that the search complied with K.S.A. 22-3717(k)(3) because Wright, a law enforcement officer, searched his phone. This subsection requires proof of reasonable suspicion to justify a search conducted by a law enforcement officer. And by arguing that (k)(3) applies, Goforth necessarily contends that subsection (k)(2), which permits a search by a probation officer without cause, does not apply. The two sections are mutually exclusive.

### C. *The Contemporaneous Objection Rule Is Inapplicable*

The State's last procedural hurdle alleges that Goforth failed to contemporaneously object to the polygraph examination and related evidence at trial, so he failed to preserve the issue for appeal. Goforth admits that he did not object to admission of his phone or to Bansemer's and Wright's testimony about the pictures seized from his phone. Still, he argues that he objected at trial to the admission of the pictures themselves and to his confession, invoking the fruit of the poisonous tree doctrine.

But Goforth does not contend on appeal that the district court erred by admitting any evidence, so any lack of preservation seems immaterial. See K.S.A. 60-404. And the State does not show how a lack of a timely and contemporaneous objection to the admission of evidence, as is required for evidentiary challenges, see *State v. Scheetz*, 318 Kan. 48, 61-62, 541 P.3d 79 (2024), impacts any issue on appeal. Although Goforth contends that the admission of the photos from his phone violated his Fourth and Fifth Amendment rights, the contemporaneous objection rule has no bearing on our analysis of those constitutional issues. We thus decline to address the merits of this procedural challenge.

8

## II. WERE GOFORTH'S FIFTH AMENDMENT RIGHTS VIOLATED?

We next address the merits of Goforth's claim that police obtained the incriminating photos on his phone, which led to his confession, in violation of his Fifth Amendment rights.

"On a motion to suppress, an appellate court generally reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo." *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). In reviewing the factual findings, an appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Sesmas*, 311 Kan. 267, 275, 459 P.3d 1265 (2020); *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

### A. *The Fifth Amendment's Protections Go Beyond One's Refusal to Testify at Trial*

"The Fifth Amendment, which applies to the states through the Fourteenth Amendment, protects '"the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence."' [Citations omitted.]" *State v. G.O.*, 318 Kan. 386, 396, 543 P.3d 1096 (2024).

> "The Fifth Amendment protection against self-incrimination and the Fourteenth Amendment Due Process Clause require that statements made to government officials are given voluntarily. Overreach by police or other state actors—that is, intimidation, coercion, deception, or other misconduct—is a necessary predicate to finding a confession is not voluntary, and there must be a link between the overreach and a defendant's resulting confession to establish the constitutional violation. *G.O.*, 318 Kan. at 404." *State v. Huggins*, 319 Kan. 358, 367, 554 P.3d 661 (2024).

The Fifth Amendment privilege applies not only to persons who refuse to testify against themselves at their own criminal trial, "'but also "privileges [them] not to answer official questions put to [them] in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [them] in future criminal proceedings."' [Citations omitted.]" *Von Behren*, 822 F.3d at 1144; *Bankes v. Simmons*, 265 Kan. 341, 349-50, 963 P.2d 412 (1998).

> "This includes witnesses called to testify—'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory'—when the answer could subject them to criminal liability. *Kastigar v. United States*, 406 U.S. 441, 444-45, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972). Along with protecting answers which would support a criminal conviction, the privilege also protects information which 'would furnish a link in the chain of evidence' that could lead to a criminal prosecution. *Hoffman*, 341 U.S. at 486." *State v. Showalter*, 319 Kan. 147, 155, 553 P.3d 276 (2024).

In *Bankes*, Kansas' Sexual Abuse Treatment Program (SATP) required an admission of guilt for the crime for which the inmate was convicted. Bankes objected to that requirement and refused to participate in the SATP because of it. As a result, the State withheld his earned good time credits, which lengthened his sentence for each plan review period he continued to refuse to participate in SATP. Bankes claimed that KDOC's requirements that he admit guilt for his crime of conviction and participate in SATP violated his privilege not to incriminate himself, as stated in the Fifth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. Our Supreme Court explained that when the State gains information in violation of this right, it may not use that information or its fruits in later criminal proceedings. 265 Kan. at 351.

But "commitment as a sexually violent predator is a civil proceeding, not a criminal proceeding. Since the Fifth Amendment does not apply in civil settings, the petitioner's compelled information required by SATP *can* be used against him in a civil

10

commitment proceeding as a sexually violent predator." *Bankes*, 265 Kan. at 350-51; see also *State v. Faidley*, 202 Kan. 517, 520, 450 P.2d 20 (1969) (finding section 10 of Kansas Constitution Bill of Rights grants same protection against compelled self-incrimination as the Fifth Amendment). "Thus, respondents, in administering their Sexual Abuse Treatment Program, can insist that the petitioner admit responsibility, so long as his or her admission is not used against the petitioner in later *criminal* proceedings." *Bankes*, 265 Kan. at 352-53.

The district court found that Goforth's answers to the polygraph examination were not incriminating "in and of themselves . . . because they did not ask him [whether he had] any illegal materials on [his] phone." But incrimination is broader than that. Goforth's answers to mandatory questions during a required polygraph examination likely posed a danger of self-incrimination, as the information he gave created a link in the chain of evidence that led to his criminal prosecution.

> "'There is no doubt that answering questions during a polygraph examination involves a communicative act which is testimonial.' *Id.* And, as the Government recognizes, the polygraph examination to which Defendant must submit might elicit potentially incriminating statements that could 'provide a "lead" or "a link in the chain of evidence needed to prosecute the" speaker.' *Id.* at 1145 (quoting *United States v. Powe*, 591 F.2d 833, 845 n.36 [D.C. Cir. 1978]). After all, the purpose of a polygraph test is not to elicit honest responses to innocuous questions such as, for example, whether Defendant enjoyed his morning coffee." *Richards*, 958 F.3d at 967.

We thus assume, without finding, that Goforth's answers were incriminatory.

B. *An Individual Must Affirmatively Assert the Fifth Amendment Right Rather Than Answer, Absent a Penalty*

Still, to qualify for the Fifth Amendment privilege, "a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 189, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004). To properly state a Fifth Amendment claim, Goforth must show not only that Olave's questions carried a risk of incriminating him, but also that the penalty he suffered amounted to compulsion. See 542 U.S. at 189; *Doe v. Heil*, 533 Fed. Appx. 831, 836 n.4 (10th Cir. 2013) (unpublished opinion).

To show the compulsion element of this claim, Goforth relies on *Von Behren* and related federal cases. Stated simply, these cases hold that the Fifth Amendment forbids a State from compelling self-incriminating statements as a condition of probation or supervised release and then using the statements to prosecute a new crime. In *Von Behren*, the 10th Circuit held that Colorado officials violated the Fifth Amendment by requiring a probationer to submit to a polygraph test as a condition of his supervised release and by threatening to revoke it for invoking his privilege against self-incrimination. 822 F.3d at 1141. *Von Behren* found that the probationer's answers to mandatory questions during a required polygraph examination posed a danger of self-incrimination. And those answers were compelled because the government had expressly asserted that it would seek his remand to prison if he refused to answer the incriminating questions. 822 F.3d at 1145-48.

The district court found *Von Behren* distinguishable, found Goforth's supervisory agreement more like that in *Richards*, 958 F.3d at 967-68, and found the government had not taken the extra and impermissible step of compelling the defendant to incriminate himself. As detailed below, we agree.

The general rule is that a Fifth Amendment privilege must be claimed when self-incrimination is threatened. *Minnesota v. Murphy*, 465 U.S. 420, 429, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984). So an individual must affirmatively assert his Fifth Amendment right rather than answer. Unlike the petitioner in *Bankes*, Goforth did not assert his Fifth Amendment rights but answered the polygraph questions without objecting.

Still, some "self-executing exceptions" have been recognized where "'some identifiable factor "was held to deny the individual a 'free choice to admit, to deny, or to refuse to answer.'"' 465 U.S. at 429." *McGill v. State*, No. 121,037, 2020 WL 4726038, at *10 (Kan. App. 2020) (unpublished opinion). Goforth relies on the "penalty" exception addressed in *Murphy*. In that line of cases the State sought to induce a witness to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions capable of forcing the self-incrimination which the Amendment forbids. *Von Behren*, 822 F.3d at 1149. Murphy, like Goforth, had not asserted the privilege. The *Murphy* Court explained that the penalty exception applies when an individual's assertion "is penalized so as to 'foreclos[e] a free choice to remain silent, and . . . compe[l] . . . incriminating testimony.'" 465 U.S. at 434 (quoting *Garner v. United States*, 424 U.S. 648, 661, 96 S. Ct. 1178, 47 L. Ed. 2d 370 [1976]). *Murphy* held that when the State "either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation," that assertion would lead to the "classic penalty situation [in which] the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." 465 U.S. at 435. But because Murphy's probation officer never threatened that a refusal to answer would lead to probation revocation, the Court found that Murphy's incriminating statements were voluntary. 465 U.S. at 437-39.

More recently, in *Richards*, 958 F.3d at 967-68, the Tenth Circuit analyzed the *Murphy* and *Von Behren* holdings. Richards asserted that the periodic polygraph testing required as a special condition of his supervised release violated his Fifth Amendment

right against self-incrimination, raising a facial challenge to the condition's constitutionality. 958 F.3d at 968. The court recognized that polygraph answers were testimonial and could provide a link to one's future criminal prosecution. Still, the court concluded that requiring Richards to submit to periodic polygraph testing did not violate his Fifth Amendment rights because no government actor had threatened to revoke his supervised release for refusing to answer a question. 958 F.3d at 967-68. The polygraph condition thus failed to satisfy the compulsion element of the defendant's Fifth Amendment claim. 958 F.3d at 967.

C. *Goforth's Failure to Assert His Fifth Amendment Rights Is Not Excused*

Unlike *Von Behren*, Goforth was not compelled to answer polygraph questions after first refusing. And the record has no evidence that Goforth answered the polygraph questions because he feared that his probation would be revoked if he remained silent. Goforth does not contend that anyone told him that an assertion of the privilege would result in a penalty.

Nor does Goforth's supervised release agreement threaten to revoke his release for refusing to answer a question. It requires his participation in polygraph testing as a condition of his release, but it does not state that his probation officer would seek revocation if he did not respond to questions. Instead, it provides that in the event of a violation, Goforth may be arrested on a warrant, and imprisoned pending a hearing before the Kansas Prisoner Review Board to determine whether his release should be revoked. Goforth agreed that he understood that he would be afforded a preliminary hearing whenever necessary, to determine whether he had violated any conditions, unless he chose to waive that hearing or the court determined a violation by due process of law.

Thus, the terms of Goforth's supervised release agreement do not limit his freedom to decline to answer particular questions and contain no suggestion that his probation is

conditioned on his waiving his Fifth Amendment privilege with respect to further criminal prosecution. His probation condition simply says that he will "[s]ubmit to polygraph examinations as directed by [his] parole officer and/or treatment provider." In short, Goforth's conditions of release did not require him to refrain from raising legitimate objections to furnishing information that might lead to his conviction for another crime. His conditions do not actually require a choice between asserting the Fifth Amendment and revocation of his supervised release. The record contains no reasonable basis for concluding that the State tried to attach an impermissible penalty to the exercise of Goforth's privilege against self-incrimination.

Nor do the facts show a reasonable basis for Goforth to believe that he had to choose between asserting the Fifth Amendment and having his supervised release revoked. Under our revocation statute, the State must prove a probation violation by a preponderance of the evidence; then the district court has discretion to revoke probation and impose the underlying sentence unless otherwise limited by statute. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022); see K.S.A. 22-3716. And we know of no case in which the State has tried to revoke probation because a probationer refused to make nonimmunized disclosures about his own criminal conduct. "[United States Supreme Court] decisions have made clear that the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." *Murphy*, 465 U.S. at 438.

True, Goforth was compelled to submit to a polygraph test by a probation officer, but that is indistinguishable from the compulsion felt by any witness who is required to appear and give testimony, so it does not excuse his failure to timely exercise the privilege. See *Murphy*, 465 U.S. at 437. And "[a] state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege." 465 U.S. at 435. Goforth fails to show an implied or express threat of revocation as is necessary to meet the penalty

15

exception in this context. He revealed incriminating information instead of timely asserting his Fifth Amendment privilege, yet his disclosures were not compelled. Because he was not compelled to incriminate himself, Goforth cannot successfully invoke the privilege to prevent the information he volunteered to his probation officer from being used against him in a criminal prosecution. His Fifth Amendment claim thus fails.

III.  DID THE SEARCH OF GOFORTH'S PHONE VIOLATE GOFORTH'S FOURTH AMENDMENT RIGHTS?

Goforth next asserts that Wright's search of his phone violated his Fourth Amendment right to be free from unreasonable searches and seizures. Goforth argues that the district court erred by upholding the search without cause under K.S.A. 22-3717(k)(2) because Wright, who searched his phone, was a law enforcement officer and thus needed reasonable suspicion to conduct the search, as required by K.S.A. 22-3717(k)(3).

The record shows that Goforth consented to the search of his home before it was searched. Goforth signed a written consent to search as a condition of his postrelease supervision. And consent is an exception to the general rule that a warrantless search is unreasonable. See *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014).

Although Goforth correctly notes that the district court did not rely on consent, Goforth now contends that the search exceeded the limitations of his consent. When the basis for a search is consent, the search must conform to the limitations placed upon the right granted by the consent. Goforth agrees that he consented to a search by parole officers, their staff, and KDOC enforcement, apprehensions, and investigations officers "with or without a search warrant and with or without cause." And he concedes that the search of his house was done by those officers. Similarly, Goforth concedes that the seizure of his phone was ordered by his postrelease supervision officer and was

16

completed by a member of KDOC's enforcement, apprehensions, and investigations unit. So he does not challenge the seizure of his phone.

But Goforth objects that the search of his phone was by police officer Wright, triggering his consent to search by "any law enforcement officer" upon reasonable suspicion that he had violated his conditions of release or engaged in criminal activity. See K.S.A. 22-3717(k)(3). He contends that the State failed to show that officer Wright had reasonable suspicion.

Goforth's release agreement confirms the distinction between a search by a parole officer and a police officer. As to a search, Goforth agreed to:

- "Be subjected to a search of my person and my effects, vehicle, residence, and any other property under my control by parole officers, any authorized parole staff, and department of corrections enforcement, apprehension and investigation officers with or without a search warrant and with or without cause[; and]
- "Be subjected to a search of my person and my effects, vehicle, residence, and any other property under my control by any law enforcement officer based on reasonable suspicion of violation of conditions of post-incarceration supervision, or reasonable suspicion of criminal activity."

This language reflects the same parameters for searches of parolees and persons on postrelease supervision established in K.S.A. 22-3717(k)(2) and (k)(3), respectively.

But the search of Goforth's phone was not warrantless. It is undisputed that after Wright found one suspicious photograph on Goforth's phone, she got a warrant before searching further. The statute and Goforth's conditions of release permit warrantless searches under the stated conditions, but they do not prohibit a search pursuant to a warrant, which requires probable cause—a standard higher than reasonable suspicion. Although a warrant is generally not necessary for a search of a person on postrelease

17

supervision, see *State v. Toliver*, 307 Kan. 945, 958, 417 P.3d 253 (2018) (noting diminished expectation of privacy dictated by terms of one's parole agreement), a warrant is certainly sufficient. Nothing in K.S.A. 22-3717 or Goforth's agreement negates the general rule that a search pursuant to a warrant is reasonable and legal. See *State v. Estrada-Vital*, 302 Kan. 549, 556, 356 P.3d 1058 (2015) ("'[A] "reasonable," and, thus, a constitutionally valid search, is one conducted pursuant to a warrant.'"). Thus, as the district court held, the photos Wright found under the warrant were during a legal search that did not violate Goforth's Fourth Amendment rights.

Goforth's claim of an illegal search thus narrows to the initial photograph Wright found without a warrant. Goforth contends that when a parole or probation officer enlists the aid of police officers in searching a person, this triggers K.S.A. 22-3717(k)(3)'s requirement of reasonable suspicion for a search by a law enforcement officer. Yet he cites no authority for that assertion. Kansas cases reflect that police officers sometimes aid parole officers in arresting a person. See, e.g., *State v. Edwards*, 39 Kan. App. 2d 300, 304, 179 P.3d 472 (2008); *State v. Austin*, No. 89,124, 2003 WL 21947736, at *2 (Kan. App. 2003) (unpublished opinion). But we have found no Kansas case addressing the extent to which police may aid parole officers in a search before that search is transformed into a routine law enforcement search.

Still, persuasive authority rejects Goforth's contention. See *State v. Peters*, 130 Idaho 960, 962, 950 P.2d 1299 (Ct. App. 1997); *State v. Pinson*, 104 Idaho 227, 233, 657 P.2d 1095 (Ct. App. 1983). "Nothing precludes law enforcement officials' cooperation with a parole officer's request to assist in a parole search." *State v. Cruz*, 144 Idaho 906, 910, 174 P.3d 876 (Ct. App. 2007); *State v. Vega*, 110 Idaho 685, 688, 718 P.2d 598 (Ct. App. 1986).

Although police may not use a parole officer as a "stalking horse" to evade search warrant requirements, officers may work together, and a search resulting from such

cooperation is not illegal for that reason. *United States v. Harper*, 928 F.2d 894, 897 (9th Cir. 1991), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012). So for example, in *People v. Vann*, 92 A.D.3d 702, 938 N.Y.S.2d 182 (2012), the police officers' assistance in executing a parole violation warrant did not render their search of a parolee's residence a police operation, so as to violate the parolee's right to be secure against unreasonable searches and seizures. There, the parole officer had not acted as an agent or conduit for the police in conducting the search, the parole officer had initiated and conducted the search, and the search was done to further parole purposes related to the parole officer's official duties.

Of course, a probation or parole search may not be a subterfuge for a police search as part of a criminal investigation. See, e.g., *State v. Cowans*, 87 Ohio St. 3d 68, 75-76, 717 N.E.2d 298 (1999) (finding police may cooperate in proper search by probation officer); see also *United States v. Chandler*, 56 F.4th 27, 43 (2d Cir. 2022) (probation department did not impermissibly act as "stalking horse" for city police department, despite assertion that police department was true law enforcement animator of search and probation officers were assisted by police officers).

No facts suggest that the search of Goforth's phone was initiated by police officers or that the search was for normal law enforcement purposes rather than for purposes connected to the enforcement of Goforth's conditions of probation. Nor do the facts suggest that the search was a subterfuge for a police search. Rather, the police involvement here was nothing more than technical assistance with the parole officer's request to perform a search of Goforth's phone. Parole officers asked Wright to conduct a forensic extraction/examination of Goforth's phone because they lacked the technical ability or forensic expertise to do so themselves. Under these circumstances, Goforth's agreement to be subject to a search by parole officers without a search warrant and without cause, as reflected in K.S.A. 22-3717(k)(2), controls, as the district court found. Because K.S.A. 22-3717(k)(2) controls, K.S.A. 22-3717(k)(3) and its requirement of

reasonable suspicion is inapplicable. Goforth thus fails to show a violation of his Fourth Amendment right to be free from unreasonable search and seizure.

## IV.   ARE GOFORTH'S FIVE CONVICTIONS MULTIPLICITOUS?

Lastly, Goforth contends that his five convictions are multiplicitous and should have been only one. The State charged and a jury convicted Goforth of five counts of sexual exploitation of a child by possessing a visual depiction based on images found on Goforth's phone. He alleges these convictions are multiplicitous, as they arose out of the same conduct and constituted a single crime under the statute.

We exercise unlimited review over issues of multiplicity and issues of statutory interpretation. *State v. Hirsh*, 310 Kan. 321, 338, 446 P.3d 472 (2019). The basic principles applicable to questions about statutory interpretation are well established. The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be established. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). An appellate court must first try to determine legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Keys*, 315 Kan. at 698.

Multiplicity splits one offense into several counts and leads to multiple punishments for one offense.

> """Multiplicity is the charging of a single offense in several counts of a complaint or information. The reason multiplicity must be considered is that it creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment [to] the United States Constitution and section 10 of the Kansas

20

Constitution Bill of Rights.'"" *State v. Schoonover*, 281 Kan. 453, 475, 133 P.3d 48 (2006).

This court conducts a two-part inquiry to determine whether a conviction is multiplicitous, asking: "(1) Do the convictions arise from the same conduct and, if so, (2) by statutory definition, are there two offenses or only one?" *State v. Thompson*, 287 Kan. 238, 244, 200 P.3d 22 (2009). The parties do not dispute that Goforth's convictions arise from the same conduct. Given this concession, we move directly to the second step of the inquiry.

For the second inquiry, the test we apply depends on whether the convictions arise from a single statute or from multiple statutes. When, as here, convictions arise from a single statute, we apply the unit of prosecution test: Did the Legislature intend to allow more than one unit of prosecution under the statute? *Thompson*, 287 Kan. at 245. Goforth acknowledges that this court has found in several unpublished opinions that the Legislature intends to allow more than one unit of prosecution under K.S.A. 21-5510(a)(2). See, e.g., *State v. Hulsey*, No. 109,095, 2014 WL 4627486, at *11-12 (Kan. App. 2014) (unpublished opinion). But he asserts that these cases were decided incorrectly, and asks us to rule differently, vacating four of his five convictions and remanding for resentencing.

The statute that Goforth was convicted under criminalizes "possessing any visual depiction of a child under 18 years of age shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or any other person." K.S.A. 2017 Supp. 21-5510(a)(2). Goforth asserts that the plain language of this statute creates a unit of prosecution for each act of possession, not for each item possessed. But *Hulsey* and our line of cases that we find persuasive and well-reasoned reject that approach.

21

In *Hulsey*, the defendant received 89 convictions of sexual exploitation of a child under K.S.A. 2010 Supp. 21-3516(a)(2), an earlier version of K.S.A. 2017 Supp. 21-5510(a)(2), which he appealed as multiplicitous. 2014 WL 4627486, at *6, 9. As here, officers seized the pictures which supported Hulsey's convictions from a single device. Based on its review of the statute in effect at the time, the panel found that Hulsey's convictions were not multiplicitous because "each individual picture supports a conviction pursuant to K.S.A. 2010 Supp. 21-3516(a)(2)." 2014 WL 4627486, at *21. The panel's rationale focused on a 2005 amendment to the statute and its use of the term "any."

> "[T]he legislature removed language criminalizing computer equipment containing child pornography [in 2005], leaving only the criminalization of 'any visual depiction' of child pornography. With this revision, the clear statutory language criminalizes each sexually explicit visual image containing a child under 18 years old. How the images are collected or contained makes no difference under K.S.A. 2010 Supp. 21-3516(a)(2). . . . Thus, by statutory definition, Hulsey is guilty of possessing each image of a child less than 18 years old. It does not matter when he obtained or accessed the images." 2014 WL 4627486, at *12.

The *Hulsey* panel found the use of the word "any" in the statute showed an intent to allow multiple units of prosecution in cases when the defendant possessed multiple prohibited items. 2014 WL 4627486, at *11-12. Other cases by this court have adopted that same analysis. See, e.g., *Gillespie v. State*, No. 126,273, 2024 WL 1231250, at *5-6 (Kan. App. 2024) (unpublished opinion); *State v. Odegbaro*, No. 108,493, 2014 WL 2589707, at *9 (Kan. App. 2014) (unpublished opinion); *State v. Odell*, No. 105,311, 2013 WL 310335, at *8 (Kan. App. 2013) (unpublished opinion). We agree with this analysis.

Goforth counters that our Supreme Court's recent comments in *State v. Eckert*, 317 Kan. 21, 27-31, 522 P.3d 796 (2023), disparage this court's analysis of the term "any."

22

We disagree. The defendant in *Eckert* was convicted of several felony and misdemeanor counts of possession of drug paraphernalia under K.S.A. 2016 Supp. 21-5709(b). That statute prohibits possession of "any" drug paraphernalia. In determining the multiplicity issue, our Supreme Court noted that this court generally "concluded the term 'any' allowed for multiple prosecutions when there were multiple paraphernalia items." 317 Kan. at 27-28. The *Eckert* court then found that the term "paraphernalia" could be defined as singular or plural, creating an ambiguity as to whether the statute prohibited drug paraphernalia as a unit or individual items of paraphernalia. Given that ambiguity, the court concluded that the statute did not allow multiple units of prosecution and reversed all but one of each of Eckert's felony and misdemeanor counts as multiplicitous. 317 Kan. at 30-31, 33.

Nothing in *Eckert*'s analysis supports Goforth's assertion that the *Eckert* court criticized this court's application of the term "any" in this context. Although "paraphernalia" may be ambiguous within K.S.A. 2016 Supp. 21-5709(b), "any" is not ambiguous within K.S.A. 2017 Supp. 21-5510(a)(2). And other than *Eckert*, Goforth cites no Kansas authority to support his claim that this court wrongly decided *Hulsey* or similar cases. This court has long agreed that "any" allows multiple units of prosecution. We find no error in that analysis and apply it here.

The word "any" in K.S.A. 2017 Supp. 21-5510(a)(2) shows legislative intent to allow multiple units of prosecution when the defendant possesses multiple prohibited items. Goforth's convictions are thus not multiplicitous. Each conviction was based on a separate image as this statute allows.

Affirmed.